No. 2714

Second Circuit

---

## BROWN-ROBERTS HARDWARE & SUPPLY CO. v. MOUNGER

---

(January 28, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Sales—Par. 230, 241.**

In a redhibitory action by which the purchaser successfully resisted the payment of the purchase price because of the worthlessness of the engine sold, the seller has the right to take back the engine.

2. **Louisiana Digest—Obligations—Par. 1, 3.**

Under Civil Code, Article. 1893, an obligation without a couse can have no effect.

3. **Louisiana Digest—Sales—Par. 151, 152, 216, 218.**

Where there is a special warranty that an engine will be suited to the purposes for which it was bought, its failure to do so and that of the seller to remedy it, although he was notified in time, will be sufficient to enable the purchaser to resist the payment of the price.

Appeal from the Twelfth Judicial District Court of Louisiana, Parish of Avoyelles, Hon. L. P. Gremillion, Judge.

Action by Brown-Roberts Hardware & Supply Company, Ltd., against Y. A. Mounger.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed in part but reserving right to plaintiff to further proceed in case it elects to equip the engine.

Judgment appealed from set aside.

White, Holloman & White, of Alexandria, attorneys for plaintiff, appellant.

J. C. Capal, of Marksville, attorney for defendant, appellee.

ODOM, J. The issues and the facts involved in this case are fully set forth in a written opinion by the district judge, which we find correct and which we adopt, as follows:

"Dr. Curry Cappel, being in need of a gasoline engine to operate a syrup mill, obtained the permission of Y. A. Mounger, the defendant, to buy one on his account from the plaintiff, Brown-Roberts Hardware & Supply Company, Limited. He, the said Cappel, in company with C. A. O'Brien, his overseer, accordingly went to plaintiff's place in Alexandria and made known his want to the salesman in charge of the mill and supply department, J. C. Carron, who showed Cappel and O'Brien an engine at a price of $256.32, less 10%. The purchase was not made at that time, but later through the telephone. The engine was shipped, received and installed at Cappel's mill near Evergreen.

"The court is under the impression, although no note has been made to that effect, outside of an answer, that it is understood that Cappel is the man to whom the plaintiff looks for the · payment, and not Mounger.

"Payment was not made for the engine, and suit was filed, asking for a monied judgment for the price of the engine, namely, $256.32. For the purpose of the decision of this case, we will leave Mounger out, reserving to the plaintiff the right to further proceed against him if desirable, and direct the consideration to Cappel and the real debtor.

"Cappel refused payment, or denies liability, because of the alleged fact that the engine was guaranteed to run his cane mill by Carron, plaintiff's salesman, and that it failed to do so as guaranteed; that if it is made to effectively run the mill he will pay for it.

"The case was tried and, in the opinion of the court, the only question for determination is that of whether or not it was guaranteed to run that mill, and if so, did it do it.

"Carron denies that he guaranteed that the engine would run the mill in question, but that he guaranteed it to run any 12-inch mill, or 'that it was an eight-horsepower engine and would guarantee it to pull a mill that required an eight-horsepower engine to pull'. Further, 'that any mill that required an eight-horsepower engine to pull it'. That he pointed to a 12-inch mill in the store and said that it would run a mill like that. He testifies that he heard Cappel was having trouble with the engine and went with him to the mill, that the mill was larger than the one in the store, but that he did not measure Cappel's mill, and was not positive that Cappel's mill is a 12-inch mill. That he found nothing the trouble with the engine, that it was mechanically in good shape.

"Cappel testified that Carron guaranteed the engine to pull his mill. That it was described to him, the kind and size, that he bought it on Carron's recommendation. That he did not pay because it did not do the work satisfactorily; that if made to do the work as required he will pay for it.

"O'Brien testified that he was with Cappel and Carron in the store when the question of the engine was discussed; that it was particularly described to Carron, and that Carron guaranted that the engine would do the work. That it was installed

but would not give the necessary power; that a new coil was sent and that did not relieve the situation. That Carron recommended an eight-horsepower engine; that he, OBrien, did not do any figuring, but Carron did, and it was on his recommendation that the engine was bought.

"Herbert Ducote, an expert mechanic, testified that the Cappel mill is a 12-inch mill. That the engine is an eight-horsepower engine. That it would operate the mill if it worked as supposed. That the engine is or was not equipped for that mill, on account of its being equipped with battery ignition. That it should have been equipped with high-tension magneto. That it was not possible to operate the mill with the engine as received and equipped. That that type of engine is not the type used for syrup mills. That he worked on all syrup mills there. That all 12-inch mills are supposed to require the same horsepower. That the size of the rollers govern the power of the engine.

"Gelsoe, another expert mechanic, testified on behalf of plaintiff that he went to see the engine and that, with the exception of a few minor adjustments, it was in perfect condition. That, in his opinion, the trouble is with the pulley, whose bore is ⅜-inch larger than the shaft, and that it was wrongly bushed, that it was there a whole lot of power was lost. He did not know how much effect it would have on the engine; that it formed, as it were, an eccentric, causing the engine to jerk and decrease the power. That he did not notice if that engine was built for magneto or not. That he did not measure the mills, nor the pulleys; could not, under oath, tell the degree of power lost. That he did not know of any syrup mill run by such an engine with dry battery. That he did not know of any engine of that power where there was not a magneto; that a magneto is better on that engine—would operate longer and better. That Ducote should have been in better shape to judge of the trouble, having seen an actual demonstration of it under grinding. That it looked to him that it was an eight-horsepower engine, but did not test it. That he did not see anything about the engine indicating that it had been jerked out of place by defective pulley. That he did not examine the engine inside; that it would not have

to be injured outside. That it had been run on retarded spark, then that he thought it had been run on retarded spark.

"Carron further testified that it was an old mill and whether or not the age of the mill had anything to do with the engine depended upon the condition in which it was; that he did not see the engine at work; that he did not attach it to the mill; that he did not make any detailed examination of the mill, did not know the size, was interested in the performance of the engine.

"Ducote was placed on the stand to rebut Kelsoe's testimony relative to the defective pulley, and said that there was nothing to indicate that the engine or anything about it or the mill was out of line; that everything was in line; that even if the pulley was out of line or center it did not matter or reduce the power; that that was regulated by the belt and idler. That the belt and the idler would correct any little irregularity, whether it be in the plumbing, bushing, or whether it be out of line for any other cause.

"Now, the question: Was there any guarantee that it would run Cappel's mill? The mill is positively testified to be a 12-inch mill. Carron guaranteed the engine to run a 12-inch mill. Cappel and O'Brien testified that such a guarantee was made.

"Cappel needed an engine; went there to buy one, relied upon what Carron told him after describing his mill; bought the engine, installed it, and it proved not to do the work.

"Ducote said that that engine would not operate the mill satisfactorily unless equipped with a high-tension magneto.

"Kelsoe said that the trouble was with the pulley.

"Ducote said that the pulley was not the trouble.

"Kelsoe did not see the engine under demonstration. Ducote saw it.

"Ducote is positive throughout his testimony. Kelsoe is not positive.

"Cappell was at all times willing to pay for the engine if it was made to do

the work. It was not made to do the work. It is true it was used for one grinding season, but it was testified positively that it did not work satisfactorily.

"Therefore, there is a preponderance of evidence in favor of Cappel that the engine was guaranteed to pull his will, which was particularly described. Ducote is positive in all his testimony, and having been on the ground and seen an actual demonstration of the engine during the grinding season, the court feels that it should accept his testimony.

"Consequently the court is of the opinion that the engine was not defective, properly speaking, but improperly equipped and not suitable to operate a syrup mill. That it was guaranteed to operate a 12-inch mill, which is the size of the Cappel mill. That it failed to operate same as guaranteed; that plaintiff was notified of that fact and had time to remedy it."

Counsel for plaintiff say, in brief, that if the engine had been defective defendant's defense was a redhibitory action and that defendant should have brought suit to set aside the sale, in which event he should have tendered the engine back to the vendor.

But a reading of the pleadings disclose that the defense to the action brought by plaintiff is that the engine was sold under a special warranty by the seller that it was suitable for the purpose for which it was bought and that it was not suitable for that purpose and that, therefore, the cause or consideration of the contract failed.

He resists plaintiff's demand for the price on that ground.

The district judge was of the opinion that the defendant made good that defense under the facts proved, and in that opinion we concur.

The cause or consideration which moved defendant to purchase the engine was that it would develop sufficient power to run his cane mill. He purchased it for that purpose and so informed plaintiff. After making known to plaintiff all the facts as to the kind and size of his mill and the further fact that it was a mill already set up and in use, plaintiff assured defendant that the engine would meet his requirements. It failed to do so and was, therefore, worthless to defendant.

Defendant had the right to resist plaintiff's demand for the price on that ground.

The contract between plaintiff and defendant was, substantially, that plaintiff was to furnish an engine that would operate defendant's mill. The engine, having failed to operate the mill, the plaintiff failed to fulfill the obligation of its contract. It, therefore, follows that defendant is relieved of his obligation to pay the price.

See The National Water Purifying Co. vs. The N. O. Waterworks Company, 48 La. Ann. 773, 19 South. 865.

"It may be pleaded in defense of an action for the price that there has been an entire failure of consideration, as, for example, where the goods are worthless or worthless for the purpose for which sold."

35 Cyc. 539.

See also 9 Cyc. 339.

An obligation without a cause can have no effect. Civil Code, Art. 1893.

Defendant kept the engine during a part at least of the grinding season of 1924 and used it, and counsel argue that he cannot now claim that it was defective and resist payment of the price on that account, and they cite the case of Hooper vs. Dry Hand Mop Co., Inc., 1 La. App. 621, in support of their contention.

In that case the purchaser kept and used the goods and made partial payments on the price, and it is not stated in the opinion that any complaint was registered by the purchaser.

Counsel also cite the case of Dreyfus vs. Mrs. Wm. Lourd & Co., 111 La. 21.

In that case the court found that plaintiff had furnished articles of the kind and quality called for and that his warranty went no further.

In the case at bar there was a special warranty that the engine would do a certain thing.

The cases cited by plaintiff do not support its theory.

In the case at bar defendant notified plaintiff as soon as it was found that the engine was not satisfactory, and plaintiff sent a mechanic to look it over. Efforts were made to make the engine function properly, without avail. Defendant made timely and repeated protests to plaintiff that the engine was not satisfactory. Under the circumstances disclosed, defendant has not forfeited his right to demand that he be relieved of his obligation to pay the price. Both parties made efforts to make the engine function properly, all without effect.

The District Court rejected plaintiff's demand and ordered the suit dismissed. We approve and affirm the judgment to that extent.

But the court went further and ordered that the engine be held subject to the orders of plaintiff "or until such time as the plaintiff can make good the guarantee under which the said engine was sold, reserving to the plaintiff the right to further proceed against the defendant in the event the plaintiff elects to so equip the said engine as to meet the requirements of the said guarantee under which it was sold, as indicated in the written opinion assigned by the court".

We see no reason to further prolong the controversy. We may as well end it now. Plaintiff was called upon to make good its warranty and has failed to do so. It does not claim or demand the right to equip the engine so that it will meet the requirements. Plaintiff has enjoyed all along the right reserved to it by the court below. If the complaint of defendant had been asserted for the first time in his answer to the suit, the case would be different. Plaintiff was called upon repeatedly to make good its guarantee. It either could not or would not do so. Let the controversy be at an end. Of course, the plaintiff may repossess the property, or make such other disposition of it as it sees fit.

For the reasons assigned, it is therefore ordered and decreed that the judgment appealed from, insofar as it rejects plaintiff's demand and dismisses its suit, is affirmed; and that, insofar as it reserves to plaintiff the right to further proceed against defendant, in case it elects to equip the engine, etc., the judgment appealed from is set aside.

All costs to be paid by plaintiff, appellant.