No. 22,678.

THE KANSAS FLOUR MILLS COMPANY, *Appellant,* v. R. W.
MOLL, *Appellee.*

### SYLLABUS BY THE COURT.

1. SALE—*"Fanchon Flour"—Flour Tendered Not "Fanchon Flour"—Buyer's Right Not to Accept it.* A seller who contracts with a buyer to sell and ship to him an article described as "Fanchon flour," which was known to be a hard-wheat flour, is under an implied obligation to deliver to the buyer flour of that kind, and if he tenders flour not of that kind the buyer may refuse to receive it.

2. SAME—*Evidence—Findings—Flour Not "Fanchon Flour"* Under the evidence and findings, the flour tendered by the seller was not hard-wheat flour, and that was a condition precedent to the liability of the buyer for nonacceptance.

3. SAME. It is held that the evidence supported the findings, and also that the findings supported the judgment that was rendered.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed May 8, 1920. Affirmed.

*G. A. Roberts, J. W. Parker,* both of Olathe, and *Glen A. Wisdom,* of Kansas City, Mo., for the appellant.

*W. D. Morrison,* and *C. L. Randall,* both of Olathe, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the Kansas Flour Mills Company to recover from R. W. Moll $270 as damages resulting from the alleged violation of a contract for the sale of flour. The defendant prevailed, and plaintiff appeals.

The contract was for the sale of three shipments of a brand designated as "Fanchon flour," which is a high-patent hard-wheat flour. The first shipment was made to defendant at Olathe, and was accepted and found to be of the kind and quality of flour sold. The second shipment was accepted and paid for, but defendant found afterwards that it contained considerable soft-wheat flour. Later the third shipment was made under a bill of lading with sight draft attached, which was sent to a bank in Olathe for collection, but this was not ac-

cepted. The testimony tended to show, and the trial court found, that this shipment was not strictly hard-wheat flour, but that it contained a substantial percentage of soft wheat. The defendant refused the shipment because the second shipment which he had accepted was not hard-wheat flour. It was further held that as the shipment was under a bill of lading, with a draft attached, the defendant had no opportunity to examine or test the flour, and that when the agent of plaintiff came to adjust the matter and arrange for an acceptance of the flour, the defendant offered to accept and pay for it if plaintiff would guarantee that it was straight hard-wheat flour, or he offered to accept another shipment with such a guaranty, but these proposals were declined by plaintiff, and defendant then refused to accept or pay for the shipment. Upon these findings judgment for defendant was given.

The plaintiff insists that under the facts and findings in the case the plaintiff is entitled to recover. It is said that it was the duty of the defendant to receive the shipment upon arrival, and that there was no justification for his demand of a guaranty. The defendant was not required to accept any flour except the kind purchased. He purchased "Fanchon flour," and the evidence of both parties agrees that it is a high-grade hard-wheat patent flour. That which was shipped to defendant was not the kind of flour purchased. The objection to it was not that it was an inferior grade of "Fanchon flour," but that it was not that brand of flour. One witness who examined it said that about 25 to 30 per cent of it was made from soft wheat. It was shown that flour made from hard wheat differs materially in quality as well as in value from soft-wheat flour. There is testimony to the effect that flour made from soft wheat is "kind of sticky," and that a sack of hard-wheat flour yields four or five loaves more of bread than can be made from a sack of soft-wheat flour. But regardless of the difference in value or quality in the two kinds of flour, the defendant had a right to insist on the article he had purchased. He was no more required to accept the shipment of soft-wheat flour than if it had been buckwheat flour or corn meal. The contract made may not have constituted a warranty in the strict sense, but there was an implied obligation that the seller would ship and tender "Fanchon flour," that is, hard-wheat flour. That was a

condition precedent to a liability of the buyer for nonacceptance. In a case involving a sale of lath, which were sold under the description of "cypress lath," it was said:

"That the description, 'No. 1 cypress lath,' is a condition precedent to the sale or is an implied warranty that the goods possess the quality described is the general rule of law cannot be doubted, nor is it material which of the constructions is adopted." (*Johnston v. Lanter*, 87 Kan. 32, 35, 123 Pac. 715.)

(See, also, *Johnston v. Lanter*, 98 Kan. 62, 157 Pac. 266; *Morse v. Moore*, 83 Me. 473; *Flint et al. v. Lyon*, 4 Cal. 17; *Whittaker v. McCormick*, 6 Mo. App. 114; *Carriage Co. v. Smith & Co.*, 123 Ia. 554; *Carleton v. Lombard, Ayres & Co.*, 149 N. Y. 137; *Springfield Shingle Co. v. Edgecomb Mill Co.*, 52 Wash. 620; 35 L. R. A., n. s., 258, with a note citing many authorities.)

In the note to the last case cited, it is said:

"Without reference to whether the description of an article in a contract of sale is regarded as a condition precedent, a warranty of identity, or an implied warranty of quality, it is well settled that where the description refers to an article of a specific kind, an article corresponding with this description must be tendered, in order to place upon the purchaser any obligation to accept it. Strict compliance is usually the test." (p. 288.)

Defendant did not demand inspection, but as the flour was shipped there was no opportunity for inspection. He did challenge the shipment on the ground that it was not the article purchased, and he did this because the former shipment was not the kind of flour specified in the contract. Because of that shipment he had some reason to question that the flour sent complied with the contract. In refusing it he took the risk of paying damages if the flour had turned out to be hard-wheat flour, but as we have seen the shipment had a greater proportion of soft wheat in it than was in the second one. If he had paid the draft and taken possession of the flour he would have had the right to turn it back to the plaintiff and recover the price paid, or if he had kept it he could have recovered the damages sustained by the violation of the contract, or he could reject the flour, as he did, for noncompliance with the contract.

Plaintiff argues that he had no right to demand the giving of a guaranty that the flour was the article purchased. It is true there was no stipulation of that kind in the contract, but in view

of his experience with the former shipment, it was not unreasonable that he should ask some assurance that the article tendered was that which he had bought. It was at least a notice to plaintiff that defendant must have an opportunity to test the shipment before accepting it. Although plaintiff's representative was on the ground in negotiations with the defendant and had learned the grounds of defendant's objection, he did not offer defendant an opportunity to test the flour, and would not give him any assurance that the flour tendered was the kind provided for in the contract. Even if the defendant had no right to demand the guaranty that was asked, he was entitled to reject the article substituted for that which he had purchased.

We find nothing substantial in the objections to rulings on the evidence. So far as the agency of Swain was concerned, it was shown that he sold the flour and that he was sent to Olathe to adjust the dispute concerning it with the defendant. We think the evidence of his agency was sufficient.

The findings of the court appear to be sustained by the evidence, and they are deemed to be sufficient to support the judgment that was rendered.

Judgment affirmed.