KARDIS v. BARRERE

(July 1, 1931.   Opinion and Decree.)
(July 20, 1931.   Rehearing Refused.)
(October 6, 1931.  Writs of Certiorari and
Review Refused by Supreme Court.)

Paul W. Maloney, of New Orleans, attorney for plaintiff, appellee.

Carroll, McCall & Plough, of New Orleans, attorneys for defendant, appellant.

DUNBAR, Judge ad hoc.  Plaintiff seeks to recover the purchase price of two certain ice cream boxes sold by him to the defendant, described in an advertisement which brought about the sale as "two frigidaire ice cream cabinets," and described in the notarial act of sale as "two certain

ice cream frigidaire boxes, containing eight holes. White enameled."

The defendant in his answer alleges a repudiation and rescission of the sale, and denies liability for the purchase price on three separate grounds, although the three defenses are not clearly and logically separated in the answer and evidence, to-wit:

(a) That there was an express verbal understanding between the defendant and plaintiff at the time of the purchase and delivery of the property, and also at the time of the execution of the act of sale, that the defendant, as purchaser, would not be required to pay either the original cash portion of the agreed purchase price, which the act of sale recited had been paid, or the notes representing the balance of the purchase price, if, after trial of the boxes in defendant's place of business, the two ice cream boxes did not develop a temperature of twenty degrees below zero, Fahrenheit;

(b) That the boxes leaked and were unfit for the purposes for which they were purchased; and

(c) That plaintiff represented in his advertisement, and agreed in the act of sale that the boxes sold were "Frigidaire boxes" and that defendant intended to buy and assumed that he was buying a well-known and widely advertised product, to-wit, "Frigidaire boxes," manufactured by the Frigidaire Company, and that as a matter of fact the boxes were "Russ boxes," manufactured and sold by another company, and that only the compressors and coils were manufactured by the Frigidaire Company.

The evidence is conflicting with regard to the first two defenses referred to above, and we are inclined to agree with the finding of the learned judge of the district court in this connection, who heard the witnesses and stated that on the whole he did not feel the burden of proof had been sufficiently sustained by the defendant.

The facts in relation to defendant's third defense, however, are supported by the evidence and testimony of both the plaintiff and defendant. When defendant saw plaintiff's advertisement in the paper, offering Frigidaire boxes for sale, he called at plaintiff's place of business and agreed to purchase the boxes, and the boxes were delivered by plaintiff to defendant. In a few days thereafter, the act of sale was passed, and the two boxes were described by the plaintiff in the act of sale as "two certain ice cream frigidaire boxes, containing eight holes. White enameled." Defendant testified that prior to the purchase of the two boxes involved in this case, he had purchased and had been using for some time in his business "Servel" ice boxes; that he had had difficulties with them, and had finally, by purchasing a new compressor, gotten these boxes to work satisfactorily; that he decided, however, that he would not buy any more "Servel" boxes and that when he needed additional boxes he had decided that he would purchase "Frigidaire" boxes, manufactured by the Frigidaire Company. In this connection, defendant testified that he had a high opinion of "Frigidaire" ice cream boxes manufactured by the Frigidaire Company, that he knew of this well-known and widely advertised product and determined that he would not have any other kind of boxes in his place, and that therefore, in the present case, he intended to purchase boxes manufactured by the Frigidaire Company, and would not have agreed to purchase or to have accepted delivery of the boxes if he had known that they were not "Frigidaire" boxes manufactured by the Frigi-

daire corporation. Defendant stated that, although he knew of the reputation and standing of "Frigidaire" boxes manufactured by the Frigidaire Company, he was not sufficiently familiar with the physical appearance of the different boxes manufactured by the different companies to recognize boxes manufactured by Frigidaire Company when he saw them, and for this reason did not know that the two boxes he had purchased were not "Frigidaire" boxes until an employee of the Frigidaire Company, after examining the boxes, informed him as to this fact.

There was no fraud or fraudulent misrepresentation in connection with the transaction, because the evidence shows that both the plaintiff, as seller, and the defendant, as purchaser, understood and assumed that the two boxes were "Frigidaire boxes" manufactured by the Frigidaire Company. Evidently neither the plaintiff nor the defendant could recognize a Frigidaire box when they saw one, because the plaintiff testified that he represented the two boxes as Frigidaire boxes in the advertisements and the act of sale, because "he bought them for Frigidaire boxes." Plaintiff's statement, therefore, in the advertisements, and his representation and description in the bill of sale, were evidently innocently made.

The testimony shows that, although the plaintiff and defendant assumed that the boxes were Frigidaire boxes, manufactured by the Frigidaire Company, the two boxes' were actually "Russ" boxes, although the compressors and coils attached to the boxes were manufactured by the Frigidaire Company. This fact was accidentally discovered for the first time by defendant several weeks after the boxes had been delivered, when he called in the sales manager of the Frigidaire Company to examine the boxes as a result of the dispute between plaintiff and defendant as to whether the boxes leaked and as to whether they would develop a low enough temperature for use in defendant's business. Defendant testified that, upon discovering that the boxes were not Frigidaire boxes, he notified the plaintiff to take back the boxes and refused to pay the purchase price.

We are compelled, in the absence of any facts or circumstances to the contrary, to accept defendant's statement that he intended to buy, and assumed that he was buying two Frigidaire boxes manufactured by the Frigidaire Company, and that he would not knowingly have agreed to buy or accept any other product or boxes manufactured by any other company, and defendant's assumption that he was buying and accepting Frigidaire boxes seems to have been an essential and dominating factor in inducing him to purchase the boxes. The plaintiff's advertisement and the description in the act of sale are clear and unqualified, and evidence an express promise and warranty to sell and° deliver two Frigidaire boxes. The fact that plaintiff assumed that the two boxes he was selling were Frigidaire boxes, complete in all respects as such, is immaterial. The plaintiff did not fulfill his promise and representation that the two boxes were Frigidaire boxes. The defendant, when he discovered that the boxes which had been sold and delivered to him were not the kind and character of boxes he intended to buy, and which he reasonably assumed he was buying, had a right to rescind the contract of sale and refuse to pay for the boxes, because the promise and representation as to the character and quality of the boxes was the moving and dominating factor in inducing the defendant to agree to purchase and accept the property.

Although there is considerable conflict in the jurisprudence at common law, the

weight, of authority and the opinion of eminent legal scholars are in support of the conclusion we have reached in this case. The status of the common law authorities and the reason and public policy underlying the cases, and the view we have adopted are very clearly and briefly stated by Mr. Williston in his book on Sales, vol. 2 (2d Ed.) secs. 608 and 608a, in which he discusses the right of rescission for breach of warranty:

"608. Recoupment and an action or counterclaim for damages are generally admitted remedies for breach of a warranty of goods sold; but the third remedy, that of rescission, has been the cause of much discussion. More seriously than that the restoration of the status quo is impossible, it has been urged that rescission, as it involves a transfer of title back from the buyer to the seller, that even if rescission were ordinarily permissible by the act of one party, it cannot properly be allowed where the obligation is collateral to the main contract as a warranty is said to be.

"As to the first of these objections, it has been shown in another connection that in many cases a transfer of title by the act of one party is allowed. As to the other objection, it should be observed that a warranty in the English law is not always collateral—in form at least. A promise which forms part of the description becomes a warranty when title passes. * * *

"The remedy of rescission, if allowed at all, is allowed on broad principles of justice. The basis of the remedy is that the buyer has not received what he bargained for. The desirability of such a remedy depends purely on the business customs of a community and on whether it appeals to the natural sense of justice. Do merchants who value their reputation for fair dealing take back goods which they have untruthfully, though innocently, asserted possessed particular qualities: Do reasonable buyers who have bought goods under such circumstances expect the seller to take back the goods and refund the price? These are the essential inquiries, and there can be little doubt of the answers. If a sale is induced by fraudulent statements,

rescission is admittedly proper. And if a seller knows of the falsity of the statements he makes which constitute a warranty, he is fraudulent, and the bargain may be rescinded in jurisdictions which deny the remedy of rescission for breach of warranty generally. The morality of taking advantage afterwards of false statements innocently made by insisting on retaining the advantage of a sale induced thereby, is almost as questionable as that of making knowingly false statements to bring about the sale. It is a difficult question of fact, and one which in very many cases of broken warranty, how far the seller knew that his warranty was false. It is a practical advantage if the decision of this question becomes immaterial as it does where rescission is allowed for breach of warranty.

"608a. The English Law clearly denies the right of rescission of an executed sale for breach of warranty. A diminishing number of the United States also deny it. But the majority of them allow it. (Citing authorities.) And the adoption of the Uniform Sales Act in many American jurisdictions has greatly increased the prevalence of this view. * * *"

An interesting analogy to the allowance of the remedy of rescission which we have already discussed will be found in the law governing "innocent misrepresentation." Since the promise or representation in the present case was an innocent one, the common-law authorities dealing with and discussing "innocent misrepresentations" are more logically applicable in support of our decision in the present case. Though it is not yet perhaps universally established that innocent misrepresentations give a right of rescission, the recent tendency of the common law is strongly in that direction. The status of the law and authorities in relation to innocent misrepresentation is stated by Professor Williston in his treatise on Sales (2d Ed.) vol. 2, sec. 632, as follows:

"It is not necessary in order that a contract may be rescinded for fraud or misrepresentation that the party making the

misrepresentation should have known that it was false. Innocent misrepresentation is sufficient. For though the representation may have been made innocently, it would be unjust to allow one who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations. This is often called a doctrine of courts of equity as distinguished from courts of law, and doubtless in its origin it was such; but, at the present time, it is rather a distinction between a right of rescission on the one hand, whether that right is asserted in a court of equity, in a court of law, or without the aid of a court; and an action for damages on the other hand. It is, however, a modern doctrine, and though its justice and the weight of authority already in its favor make it clear that it will prevail (citing authorities), there is no little authority for the statement that a right of rescission cannot be established because of misrepresentation, if the misrepresentation though false was made with belief on reasonable grounds in its truth. It is to be remembered also that rescission presupposes a restoration of the status quo, and is precluded if this becomes impossible."

Many of the cases cited by counsel for defendant in his brief, such as Lyons Milling Co. v. Cusimano, 161 La. 198, 108 So. 414; Stringfellow v. Botterfill Automobile Co., 63 Utah, 56, 221 P. 861, 34 A. L. R. 533 and note; Held v. Goldsmith, 153 La. 598, 96 So. 272; Kansas Flour Mills Co. v. Moll, 106 Kan. 827, 189 P. 940; W. T. Ferguson Lumber Co. v. Hiawatha Lumber Co., 105 Okl. 193, 232 P. 67; Truman's Pioneer Stud Farm v. Hansen, 108 Kan. 717, 196 P. 1087; Alabama Broom & Mattress Co. v. Nashville Broom & Supply Co., 208 Ala. 222, 94 So. 83; Southern Colonization Co. v. Derfier, 73 Fla. 924, 75 So. 790, L. R. A. 1917F, 744—although they illustrate breaches of express promises and warranties in contracts of sale similar to the breach in the present case, are not strictly applicable to the problems involved in this case,

because, in the decisions cited, title to the property had not passed, and the only questions presented for decision were whether the buyer was justified in refusing to accept delivery of the goods, or was entitled to an action for damages for the breach of warranty. The right to refuse to accept goods because of a breach of warranty or to sue for damages for the breach, after title has passed and after acceptance of the goods, especially when the breach is material and substantial, seems to be supported by the great weight of authority, both at common law and in Louisiana. In this connection, see Williston on Sales (2d Ed.) vol. 1, secs. 178-187, vol. 2, secs. 484-491; Payne & Joubert v. Lumber Co., 110 La. 750, 34 So. 763. In the present case before us, however, it is to be especially noted that the property sold was identified, title had passed, and the boxes had been delivered to and accepted by the buyer before the breach of warranty was discovered. The conflict in the common-law decisions we have previously referred to arises as a result of the relative and different emphasis given by the courts to the fact that title has passed, and whether under such circumstances rescission should not be denied and the purchaser's rights confined to a suit for damages.

The law of Louisiana, as announced in the Civil Code and commentators, seems to be in accord with the weight of authority at common law, in so far as our decision in relation to the facts involved in the case now under discussion is concerned. The articles of the Louisiana Civil Code dealing with questions analogous to the problems referred to above in the quotations from Mr. Williston and discussed by him from the viewpoint of the common law are articles 2520 and 2540, inclusive, dealing with "Redhibition." Article 2520, which allows redhibition or rescission in general,

in its terms is confined to cases involving "some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." In the case before us, however, we have an innocent misrepresentation or a breach of an express promise and warranty and not a "vice or defect in the thing sold" as described in article 2525, which in many respects is similar to a breach of an implied warranty at common law. Laurent tells us that redhibitory vices may not be confounded with the absence of certain qualities that the buyer thought to be in the thing sold, for the absence of a quality is not a vice. 24 Laurent, Principles de Droit Civil Francais (3d Ed. 1878) De La Vente, sec. 281, p. 275.

Although article 2520 seems to be restricted, the right of redhibition or rescission, however, is apparently extended by article 2529 to all cases where there is a breach of an express warranty where the misrepresentation is made in good faith. Article 2529 provides:

"A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase."

It is clear that under this article quoted above a redhibition is allowed where there has been an innocent misrepresentation as to the quality or character of the thing, even though there is not "vice or defect" within the meaning and intent of article 2520. In our opinion, article 2529 clearly extends the class and character of cases in which redhibition or rescission is permitted, and the word "quality" used in the article must be given a reasonable and liberal interpretation, and, if so construed, refers to misrepresentations in relation to the character, make, nature, characteristic, manufacture, and trade-mark and trade-name of things. In the present case, if the word "quality" is given a liberal and reasonable construction, there was, in fact, a misrepresentation of the quality and character of the thing sold which would justify redhibition.

It is to be noted that article 2529 of the Louisiana Revised Civil Code, as we construe it, announces in substance the same principle and rule as the common-law cases dealing with "innocent misrepresentations" already referred to. In order for an innocent misrepresentation to justify redhibition, however, the Louisiana Code provides that the misrepresentation must be with regard to a quality of the thing which "was the principal motive for making the purchase." It is probable that the Louisiana law in this connection is more rigid in its requirements with reference to rescission than the common law, although many common-law cases state the rule in substantially the same terms as our Civil Code. Since we are of the opinion, however, that the misrepresentation in the present case that the two boxes were "Frigidaire Boxes" manufactured by the Frigidaire Company, was the principal motive for making the purchase, the distinction, if any, between the common law and the Louisiana law on this subject is immaterial in so far as the decision in this case is concerned. For an exhaustive discussion of the articles of the Louisiana Code dealing with "Redhibition," see two notes in the Tulane Law Review, vol. 4, pp. 433 and 627. See, also, for a discussion of the Roman and Continental law on this subject, Williston on Sales, vol. 2 (2d Ed.) secs. 606 and 609, and the authorities cited.

It may be well to add, in connection with the authorities discussed above, that it is well settled that a buyer is not compelled to keep property simply because it is shown to be equal to or as good as the article or kind of property he intended to purchase and assumed that he had bought. The buyer is entitled to the exact article or the article possessing the exact qualities he expressly bargained for, if the kind of article or quality of the article is the principal motive for making the purchase. Bourne v. Shand, 2 A. C. (H. L.) 463, 475, 480, and authorities cited in Held v. Goldsmith, supra.

Counsel for defendant, in his brief, relies on the articles of the Civil Code with reference to error as to the motive and object of the contract, and cites Louisiana Revised Civil Code, articles 1841-1845, and 1896. These articles deal with the same problem as the analogous common-law cases giving a buyer the right to rescind a contract for "mistake." If parties enter into a contract on the assumption that certain things are true, it is inequitable to enforce the bargain or to allow it to stand if the mistake relates to a matter so fundamental that it must be assumed that the parties would not have entered into the transaction had they known the truth. Williston on Sales (2d Ed.) vol. 2, sec. 656. Although the authorities already referred to in relation to innocent misrepresentation and article 2529 of the Louisiana Code are sufficient to dispose of this case, we are of the opinion that if the word "quality" in article 2529 is to be narrowly construed and is not applicable to the facts of the present case, in such event, the articles of the Code in relation to error and the common-law jurisprudence dealing with the subject of "mistake" justify and support the conclusions we have reached.

The only remaining question to consider is plaintiff's contention that the failure of the defendant to discover that the two boxes were not Frigidaire boxes and complaint of this fact until approximately a month after the two boxes had been delivered to him, amounted to a waiver on defendant's part, which precludes him from asserting the defense and demanding a rescission of the sale. The evidence shows that soon after the boxes were delivered complaints were made by the defendant purchaser that the boxes leaked, and there were also complaints that the boxes would not, after being used and tested, develop a temperature low enough for use in defendant's business. In other words, there was a series of different and continuous complaints in relation to the boxes, and, as a result of these complaints and the controversy between plaintiff and defendant as to the condition and quality of the boxes, the defendant sent for the sales manager of the Frigidaire Company and learned for the first time that the boxes were not in fact "Frigidaire boxes." The defendant then, which was about a month after the delivery of the boxes, repudiated the sale by requesting the plaintiff vendor to take back the boxes and by refusing to pay for them. The conduct of the defendant buyer in this case was therefore characterized by continuous complaints based on one ground or another, finally culminating in the discovery, followed by an immediate complaint of the vital fact, that the two boxes delivered to him were Russ cabinets with a Frigidaire compressor and coils, and not complete Frigidaire boxes manufactured by the Frigidaire Company. In the light of defendant's conduct and continuous complaints, ending with an objection to the kind and character of boxes received, it is impossible, in our opinion, to find a reasonable basis for an inference of acquiescence or waiver on his part.

A buyer does not waive his right to assert a breach of any promise or warranty in connection with a sale, unless he fails to give notice to the seller of the breach of the promise or warranty within a reasonable time after he knows of such breach. The question as to whether there has been a waiver is a question of fact in each case. Williston on Sales (2d Ed.) secs. 484-486, vol. 2. We are of the opinion that the complaint was made by the defendant in this case within a reasonable time after the breach was discovered by him, and that the evidence considered as a whole negatives any reasonable inference of a waiver in this case.

The reconventional demand of the defendant prays for the money expended in connection with the installation of the two boxes in his place of business, and for the amount paid to the notary for the act of sale. Even under defendant's theory of the case and in the light of his testimony, the boxes were to be delivered to him to be used and tested, and defendant's testimony as to the verbal agreement shows that it was never contemplated that plaintiff should bear expenses of this kind, even if the boxes were returned as a result of the rescission of the contract for any cause. Defendant's claim in reconvention was therefore properly rejected by the lower court.

. It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it runs in favor of plaintiff on the main demand, be reversed, and it is now ordered that plaintiff's suit be dismissed. In all other respects the judgment appealed from is affirmed; plaintiff to pay all costs.

WESTERFIELD, J. and MORENO, Judge ad hoc, participating.