Albert E. Briede Son, Inc., is an undertaking establishment engaged in business in New Orleans. It brought this suit against Mrs. Joseph P. Murphy for a balance of $217.60 alleged to be due on its bill for services rendered in connection with the burial of her husband, who died in New Orleans on September 17, 1942. It alleges that defendant entered into a written contract under which she agreed to pay for the services rendered and that she has not paid the said balance. Defendant admits that the plaintiff corporation rendered the services and expended certain small amounts in connection therewith, and that the total amount charged was agreed to by her. She avers, however, that the plaintiff corporation has been paid in full by reason of the acceptance by it of two policies of insurance issued by Orleans Industrial Life, Health, Accident and Burial Benefit Insurance Company of New Orleans having a total face value of $475, and that this was more than sufficient to cover the entire charge which amounted to $442.60.
There was judgment for defendant and plaintiff has appealed.
Joseph P. Murphy, defendant's husband, died while at the home of his mother in New Orleans. Without the knowledge of defendant, arrangements for the embalming of the body were made with Laughlin's Funeral Home, another undertaking establishment. Plaintiff learned of this and realized that she had in her possession two policies issued by the said Orleans Industrial Life, Health, Accident and Burial Benefit Insurance Company, one of them a burial policy in her husband's name and the other a cash benefit policy of the face value of $250. While the burial policy is not in evidence, it is obvious from the record that if it was to be availed of it was *Page 915 
necessary that the funeral services be rendered by Albert E. Briede Son, Inc., the plaintiff in this suit, and not by any other such establishment. We shall hereafter state our reasons for making the statement that that policy required the employment of the Briede Company.
Mrs. Murphy called at the Briede establishment and discussed the matter with Mr. Tomasich, the manager of that company. Mr. Tomasich showed Mrs. Murphy various caskets and advised her that the cost of the funeral would depend very largely upon the cost of the casket. Tomasich says that at that time he had not seen the policies and did not know the face value of either, and that Mrs. Murphy selected a casket which "went with" the funeral of the type and value which was furnished. Mrs. Murphy admits that she selected such a casket, but she maintains that she did so only after Mr. Tomasich had examined the policies and had told her that the face value of the two policies would be more than sufficient to pay for a funeral of that cost and type.
We agree with the district judge that the evidence supporting the statement of Mrs. Murphy preponderates substantially, and accordingly we find as a fact that when Mrs. Murphy made the selection of the casket Tomasich had already examined the two policies and had told her that they would produce more than enough cash to pay for the more expensive funeral which she selected. The record shows too that she could have selected a more modest casket and that had she done so the proceeds of the burial policy ($250) would have been sufficient. The more expensive funeral and casket were agreed upon. Sometime later the Briede Company called upon Mrs. Murphy to pay a balance of $217.60, advising her that the Insurance Company which had issued the policies had refused to recognize any liability under the cash policy for $250 because of the fact that within one year of the issuance of the policy, Murphy had died of a heart ailment, whereas the policy contained a stipulation to the effect that should death result from such a cause within one year from the date of the policy, the liability of the company would be limited to the amount of premiums paid.
Mrs. Murphy maintains that she is not concerned with the question of whether the insurer is liable under that policy; that the manager of the plaintiff company, with full knowledge of the provisions of the policy, told her that those two policies were sufficient to pay for the more expensive funeral and agreed to accept and did accept the policies in payment.
The Briede Company asserts that its manager merely agreed to attempt to collect the proceeds of the policies for Mrs. Murphy, and to apply to her account such proceeds as it might collect and that at no time did he, expressly or by implication, accept the policies in payment of the bill.
There can be no doubt that ordinarily if in the payment of an obligation something is given which both parties believe to be of a certain value and later it develops that it has no value, there has been a mistake of fact in the subject matter of the agreement, and it may be set aside and demand for payment made. Tircuit v. Gottlieb, La.App., 151 So. 428; Civil Code, arts.1843, 1844; Williston on Sales 2d Vol. 2, Sec. 656; Kardis v. Barrere, 17 La.App. 433, 136 So. 135.
But there are other facts shown here which we think prevent the application of that principle. While it is true that the Orleans Industrial Life, Health, Accident and Burial Benefit Insurance Company and Albert E. Briede Son, Inc., are two separate legal entities, it is also true that Albert E. Briede, Jr., is president of both and, according to Mr. Tomasich, who it has been shown was manager of the Briede Company, they were "two separate corporations both owned by Albert E. Briede."
It is not expressly shown in the record that the burial policy required that the Briede Company be employed and the policy itself, as we have said, is not in evidence. But there are several statements which, by inference at least, show that the burial policy could be availed of only by the employment of the Briede Company. Mr. Tomasich, on several occasions, referred to "our" policies. Since he is the manager of the undertaking company, and not of the insurance company which issued the policies, it is evident that he referred to the policies of the insurance company and that when he called them "our" policies, he meant policies under which "our" undertaking company must be employed. He also said that when Mrs. Murphy called on him at the undertaking company he was expecting her because he had heard of Murphy's death and knew that the Briede Company "had the burial policy." *Page 916 
If that burial policy gave the holder the right to employ any undertaking company and did not require that the Briede Company be employed, why should Mr. Tomasich have been "expecting" Mrs. Murphy to come to the Briede establishment?
Beyond all this is the obvious fact that the purpose of such insurance companies in issuing burial policies is the desire to control, to the extent of its policies, the undertaking business and there can be no doubt that by requiring their policy holders to employ the designated undertaking company such insurance company, working in co-operation with burial companies, provide a much more costly funeral at a much cheaper rate than would otherwise be offered.
We find then that when Mrs. Murphy called at the Briede establishment with her burial policy issued by the Orleans Industrial Life, Health, Accident and Burial Benefit Insurance Company, she did so because the burial policy so required.
The two policies had been issued by the same insurance company and the president of that company was also president of the undertaking or burial company through which alone the burial policy might be made use of. Even if Mr. Tomasich did not intend to unconditionally accept the cash policy as a payment on the funeral bill, it is very evident that under the circumstances recited Mrs. Murphy was justified in believing that when Mr. Tomasich accepted those two policies he did so unconditionally and as a payment on the funeral bill. And there is written evidence which shows that Mr. Tomasich intended to accept and did accept the two policies in payment of the funeral bill. On the back of the duplicate order which Mrs. Murphy signed there appears in the handwriting of Mr. Tomasich the following:
 "Cash policy $250.00 Balance owed Briede 207.00 ------- Due Mrs. Murphy $ 43.00"
This shows that Mr. Tomasich understood that he was to take the two policies and that he would not only consider the funeral bill paid in full but that out of the proceeds of one of the policies there would be a cash balance due to Mrs. Murphy. It is obvious too that the statement of Mr. Tomasich to Mrs. Murphy that he would accept these policies induced Mrs. Murphy to select the more costly funeral.
Under these circumstances plaintiff corporation cannot be heard to say that it is entitled to the balance sued for.
The judgment is affirmed at the cost of appellant.
Affirmed.
 *Page 19