TALIAFERRO, Judge.
Plaintiff sued on open account for the price of asbestos roof coating material sold and delivered to the defendant in the months of August and September, 1944, and for the value of seven drums containing the material when shipped, the total being $404. 50.
Defendant, in answer, denied that he purchased the material from the plaintiff. He alleged that he did purchase from' Sam Wilder and W. S. Thomas material of the kind, quantity and quality for which plaintiff -sued; that said material was purchased to repair the roof on an auction barn owned by him, and said Wilder and Thomas agreed, as part of the contract of purchase, to apply the material; that they, however, defaulted in their obligation on this score *94 and he was thereby forced to expend $140.-00 to have the coating applied.
In the alternative, defendant pleads that should it be found and held that said Wilder and Thomas, in taking his orders for said material, acted as the agents of plaintiff, and therefrom a sale resulted, he then avers that said material was wholly unfit and unsuited for the use and purpose for which it was purchased by him and recommended by said Wilder and Thomas; that said material was applied according to instructions furnished therewith, but the roof of the building, thereafter leaked badly at each rainfall, and its condition in this respect constantly grew worse; that the faulty condition of said coating was not discoverable on simple inspection, and for said reasons he alleges he is entitled to have the sale of the material rescinded, for which he prays, and for judgment for $140.00.
The demand of each party was rejected. Plaintiff only appealed.
To prove plaintiff’s demand, the testimony of its credit manager and its managing partner was taken by deposition.
Defendant signed an order for the greater part of the roofing material on August 28th, the price thereof 'being $358.00. On the invoice listing this material there appear several articles of value, shipped to defendant for which no charge was made, including two hundred fifty pounds (250#) plastic cement.
While the material was being applied it was evidently discovered that the quantity of cement was insufficient, as on September 24th, Wilder sent a rush order (letter) to the plaintiff for three hundred (300) more pounds of cement. He stated therein: “It (the job) is already in progress and this is needed at once.” The charge for this cement was $46.50.
It is unthinkable that had Wilder and Thomas agreed to apply this material, as contended, defendant would have placed the order for additional material with them, after discovering that their commitment would not be observed.
Defendant can 'hardly be serious in contending that he thought he was buying the material from Wilder and Thomas. These men Were representing the plaintiff as its salesmen. Each of them signed the order of August 28th as “salesman”, opposite- defendant’s signature. In addition,' on two different occasions in 1943 defendant purchased from plaintiff some of the same kind of merchandise as is involved herein. It evidently was satisfactory as no complaint about its service was registered, and 'he paid for it.
When plaintiff honored defendant’s order of August 28th, and shipped to him the merchandise named therein, it mailed to him its “10 Year Guarantee Bond”, wherein it is stated that if the merchandise was applied pursuant to directions on the reverse side of the bond:
“and thereafter said roof fails to remain water-tight for a period of ten years from date of invoice as a result of Hydrotex proving defective; (damage from wind-storm, cyclone, hail, earthquake or other acts of providence beyond the control of the undersigned excepted) then and in that event, upon receipt of proof of claim form from buyer, shall furnish buyer, free of cost, freight collect, sufficient additional Hydrotex for buyer to recoat any surface where Hydrotex proved defective during the ten year period aforesaid.”
In belated 'brief appellee calls our attention to the fact that the record is incomplete in that it does not contain transcript of his own testimony and the testimony of witnesses sworn on his behalf. He says that two witnesses testified for him and others would have done so, but to save time plaintiff’s counsel agreed that their testimony would be the same as that of the witnesses who did testify. The trial judge in reasons for judgment refers to “defendant’s evidence”, by which, we assume, is meant the testimony adduced in his behalf.
In view of the related situation, and the failure of the appellant to comply with the provisions of either Article 601, 602 or 603 of the Code of Practice, appellee argues that the appeal should be dismissed.
Either party to a suit has the right (in cases appealable) to require the Clerk of Court to take down the testimony ad *95 duced on trial thereof. Article 601. And, when this is not done, the party intending to appeal “must require the adverse party or his advocate, to draw, jointly with him, a statement of facts proved in the cause,” to be used on appeal. Article 602. And when the parties cannot agree on the statement, then either has the right to request the Court to make such statement which shall serve on appeal. Article 603. It is conceded that neither of said courses was pursued in the present case.
The general rule has 'been announced in many cases that in these circumstances the appeal will be dismissed. See: Williamson v. Enterprise Brick Company, Inc., 190 La. 415, 182 So. 556; Durke & Broussard v. Crane, 112 La. 156, 36 So. 306; Chelette v. Roberts et al., La.App., 185 So. 678; Campbell v. Marshall, La.App., 28 So.2d 296.
But, there is an exception to this general rule, as there is to almost every' rule. It is to be found in the Williamson case, supra. The Court therein, in effect, said that if the provisions of either of Articles 601, 602 or 603 of the Code of Practice have not been availed of "and the correctness of the judgment appealed from depends upon the verha-l testimony that was heardj the appellate court must dismiss the appeal[190 La. 415, 182 So. 558] The converse of the rule is that if the correctness of the judgment does not depend upon the testimony heard, the appeal does not necessarily have to be dismissed, but should be adjudged. Parish of St. Martin ex rel. Baker v. Delahoussaye, 30 La.Ann. 1092. We believe this the situation in the case before us.
Appellant argues that inasmuch as it was not advised of the failure of the material to accomplish the purpose for which recommended and purchased (if such happened), prior to filing answer in the case, some eighteen months after the material was applied, and was not at any time called upon to fulfill the obligation of its guarantee, defendant’s action in these respects amounted to a waiver of his rights under the guarantee, and automatically released plaintiff thereunder.
In his answer defendant does not say that he advised plaintiff of the alleged defects in the material and called upon it to live up to the guarantee; nor is the suit resisted, on the ground that plaintiff breached the guarantee by not living up to it, after notice. If the facts made such a defense tenable, it was defendant’s imperative duty to have specially set it up and sustained it by adequate proof. Since this defense is not urged, we are warranted in assuming that there existed no predicate therefor.
As we view the legal situation, posed by the record facts, it may be conceded that the testimony of defendant’s witnesses, with respect to the láck of efficiency of the roofing material, was of the import as by him contended; and if this is done, plaintiff’s right to urge, because of unreasonable delay in giving notice of the failure of the material, waiver 'by defendant of his rights under the guarantee remained unaffected. The record itself, as presently made up, is sufficient to warrant a decision of the issue of waiver.
If the material was applied as directed, and leaks in the roof immediately, or very soon thereafter, developed, it was defendant’s obvious duty to have notified plaintiff of these facts and to have asked it to make good its warranty, and should it not have responded favorably to such request, then defendant would have had the right, at plaintiff’s expense, to effect the repairs. Instead of doing this, he chose to remain silent for nearly eighteen months, although regularly receiving requests for payment of the account.
By pursuing the course he did, defendant made it impossible for plaintiff to have protected itself on its guarantee. He was without right in law or equity to do as he did, and. by so doing he waived and forfeited the warranty obligation in his favor that the law and the bond imposed upon the plaintiff. In a case of this character the obligee cannot supinely sit quiet and allow matters to' drift for an unreasonable length of time without notifying the obli-gor, and then, when sued, assert successfully a defense of the character advanced herein.'
*96 It was held in Kardis v. Barrere, 17 La.App. 433, 136 So. 135, 140, that: “A buyer does not waive his right to assert a breach of any promise or warranty in connection with a sale, unless he fails to give notice to the seller of the breach of the promise or warranty within a reasonable time after he knows of such breach. The question as to whether there has been a waiver is a question of fact in each case. Williston on Sales (2d Ed.) §§ 481-486, vol. 2 * * *_»
This principle has appropriate application to the facts of this case.
For the reasons herein given, the judgment from which appealed is annulled, avoided and reversed; and, for said reasons, there is now judgment in favor of plaintiff, Hydrotex Industries, Inc., a co-partnership, arid .against the defendant, Bruce Cartwright, in the sum of Four Hundred Four and 50/100 ($404.50) Dollars, with five per cent (5'%) per annum interest thereon from March 1, 1944, until paid, and for all court costs.