LOTTINGER, Judge.
This action originated as one on an openi account wherein the plaintiff sought judgment in the amount of $1,180.53 for merchandise sold and delivered to the defendant. The latter denied that it was indebted to plaintiff and reconvened, alleging that various items purchased by it from plaintiff were defective and asked for damages covering the defective equipment as well as for injury to its credit rating. The Trial Court rendered judgment in favor of the defendant and plaintiff in reconvention and'. *119 following this judgment and a denial of an application for a new trial, the plaintiff has appealed.
The Trial Judge rendered written reasons for judgment which are as follows:
“Plaintiff originally filed a petition for a balance due on an open account allegedly owned by Louisiana Aircraft, Inc., a Louisiana Corporation domiciled in East Baton Rouge Parish, Louisiana. Plaintiff alleged in his original petition that Louisiana Aircraft, Inc. owed a balance of $1,180.53, together with legal interest from January 1, 1962 and for all costs of these proceedings. Plaintiff alleges that it sold to the defendant certain navigational equipment manufactured by Motorola Aviation Electronics, Inc. for the price of $2,-580.00, on which account certain partial payments were made, leaving a total balance due of $1,180.53.
“The defendant filed a general denial and then reconvened, alleging in his petition that the equipment purchased by Louisiana Aircraft, Inc. was installed in an airplane owned by James J. Cur-ro, Inc. and that the equipment failed to function properly and that, thereafter, at the request of Motorola Aviation Electronics, Inc., through Mr. Richard D. Corn, Field Service Engineeer, the plane was sent to Yingling Aircraft, Inc., which did certain repair work and then submitted a bill for $435.06 to James J. Curro, Inc.; that the plane was also sent to Curry-Sanders and a bill for $100.65 was sent to the owner of the plañí; that, thereafter, plaintiff-in-reconvention in order to try to get the equipment to properly function, sent the plañí to Transair in New Orleans and plaintiff-in-reconvention paid the sum of $127.21 for the repair work there. Apparently, the equipment has never functioned. Plaintiff-in-recon-vention alleges that the total bill for the equipment, plus installation charges, was $4,611.79, and that plaintiff-in-reconvention was forced to negotiate a compromise settlement with James J. Curro, Inc. for the salvage value or the trade-in value of the equipment which plaintiff-in-reconvention had installed in his plane. The compromise of $1,-600.00 meant that the plaintiff-in-recon-vention suffered a loss of $3,011.79, plus the $127.21 plaintiff-in-reconvention had paid to Transair.
“The testimony of Mr. Reginald B. Griffith, who is secretary-treasurer and manager of Louisiana Aircraft, Inc., was to the effect that he had numerous telephone calls as well as correspondence with Mr. Corn and other representatives of Motorola Aviation Electronics, Inc. Mr. Griffith testified that he agreed to send the plane to Wichita, Kansas and other places, at Mr. Corn’s suggestion, for inspection, and further agreed that Louisiana Aircraft, Inc. would pay any costs involved in any faulty installation. However, the record does not show that the fault was in the installation, but rather was in the equipment itself. Mr. Griffith also testified that his company spent numerous hours trying to get the equipment to work and were unable to do so and tried to cooperate in every way with the plaintiff, Motorola Aviation Electronics, Inc., but apparently, the equipment was not repairable. Mr. Griffith further testified that he contacted Motorola Aviation Electronics, Inc. prior to negotiating a settlement with the owner of the aircraft and that the plaintiff apparently was not interested in any further negotiations.
“This Court is of the opinion that the merchandise sold to Louisiana Aircraft, Inc. for installation in the James J. Curro, Inc. aircraft was warranted to perform the function for which the equipment was manufactured and the plaintiff cannot escape this responsibility unless there is express waiver of warranty. The Court finds no such express waiver. *120 “There was no dispute as to the balance due on the account submitted by plaintiff, which was $1,180.53. The Court feels that the $127.21 paid by defendant to Transair should be deducted, which would leave a balance of $1,-053.32.
“Plaintiff-in-reconvention has shown that he suffered a loss of $3,011.79 in negotiating- a settlement with James J. Curro, Inc., from which the figure of $1,053.32 still owed on the equipment should be deducted, leaving a balance of $1,958.49 as the total loss suffered by plaintiff-in-reconvention because of the malfunction of the equipment. There was other testimony concerning additional labor, etc., but the Court does not feel that these damages are exact enough for the Court to grant the cost of these items.
“Mr. Griffity testified that a bill in the amount of $100.65 was sent by Curry-Sanders to James J. Curro, Inc., and that a bill in the amount of $435.06 was sent by Yingling to James J. Curro, Inc. He also testified that he agreed to hold Curro harmless for these bills. It was shown that a suit is now pending in the City Court in New Orleans concerning at least one of these bills. However, there is nothing in the record to show that plaintiff-in-reconvention has paid either of these bills, and the testimony is to the effect that these bills have not been paid by plaintiff-in-reconvention. The Court is, therefore, of the opinion that this Court cannot award the amount of these bills to plaintiff-in-reconvention.
“The Court is going to award to plaintiff-in-reconvention the sum of $1,958.-49, being the difference as set forth above between the actual loss suffered by the plaintiff-in-reconvention and the amount still owed by plaintiff-in-recon-vention to the defendant-in-reconvention. The Court is further going to award to the plaintiff-in-reconvention interest from date of judicial demand until paid, and for all costs of these proceedings.”
The factual findings of the Lower Court are amply justified by the record and we think that its award does substantial justice between the parties.
 The plaintiff and defendant in re-convention filed in the Lower Court and in this Court a plea of one year prescription under LSA-C.C. Article 3536.
The record reflects that certain work was done on the equipment at Trans Air Corporation between December 19, 1961, and' April 25, 1962. The answer and reconven-tional , demand was filed on February 21, 1963, which was within one year of April 25, 1962, when it became apparent that plaintiff would do nothing further towards correcting the defective equipment. See Brown v. Dauzat, La.App., 157 So.2d 570, at pages 573 and 574, where it was held as follows:
“ * * * even after the buyer discovers the defect, however, prescription does not begin to run until the seller abandons any attempts to remedy the redhibitory defect — and the primary question before us concerns this principle.”
******
“The essential prescriptive issue arises from these continued repairs by the builder. For, even after the buyer’s discovery of the redhibitory defect, if the seller attempts to remedy it, the prescription does not begin to run until the seller abandons his attempts. Baldwin Sales Co. v. Mitchell, 174 La. 1098, 142 So. 700; Woodward-Wight & Co. v. Engel Land and Lbr. Co., 123 La. 1093, 49 So. 719; Hermeling v. Whitmore, La.App. 1 Cir., 140 So.2d 257, certiorari denied; Goff v. Dewey Olivier, Inc., La.App. 3 Cir., 137 So.2d 393, certiorari denied.
“The cited Supreme Court decisions held that prescription does not com- *121 menee when the seller attempts to remedy redhibitory defects until such seller has abandoned his efforts to do so.”
For the reasons assigned, the Judgment appealed from is affirmed.
Judgment affirmed.