AYRES, Judge
(dissenting):
Because of the importance of the principles involved, as I appreciate them, it appears appropriate I respectfully set forth, in some detail, the basis of my dissent from the majority opinion.
By this action, plaintiff seeks the enforcement of the provisions of a contract of sale wherein, for a price paid in cash and defendant’s obligation to pay certain royalties, plaintiff conveyed to defendant the right to manufacture, distribute, and sell a kerosene-burning Jet-Glo multipurpose heater described by reference to a patent pending. The heater was designed for use by nurserymen and fruit and vegetable growers for the protection of their plants, fruit, and produce from cold and freezes. A small stock of parts and a set of dies were also included in the sale. More specifically stated, plaintiff seeks to recover royalty at the rate of $1,25 per heater unit on 5,000 units obligated by defendant to manufacture during the first year of production following execution of the contract, and an additional sum as royalty on units which, it is alleged, should *75 have been manufactured during subsequent years.
The trial court found the heater so imperfect that it must be supposed a buyer would not have purchased it had he known of its vices and defects. The heater would burn for only short periods of time when, by the accumulation of soot, the fire would be extinguished. Before relighting, the unit would have to be dismantled and the parts cleaned. Hence, it would not generate heat to serve the purposes for which it was intended. Nevertheless, rescission of the sale was denied on a basis of redhi-bition because defendant was no longer in position to return the dies and parts.
However, under the provisions of LSA-C.C. Art. 2543, the court decreed a reduction in the purchase price of the property and rights conveyed to the extent of $6,-250.00, an amount equal to the royalty contracted for the first year’s production. Accordingly, the trial court rejected the demands of both plaintiff and defendant.
In our initial review of the record, we found no error in the conclusions reached by the trial court that the heater was defective, would not operate successfully or satisfactorily, and could not be made to do so despite numerous and expensive efforts, and accordingly concluded that the heater was without value and was worthless. On rehearing, the majority opinion states:
“ * * * The evidence does not support a finding that the product is totally worthless or without value or utility, although it is certainly true that it does not have the long-burning characteristic which indicated a substantial profit potential in sales to orchard growers.”
On a basis of mutual error predicated upon the language of LSA-C.C. Arts. 1820, 1881, and 1882, the obligation of warranty as set forth in LSA-C.C. Arts. 2475 and 2476, and for described defects allegedly rendering the heaters useless and worthless as denounced by LSA-C.C. Art. 2520, as well as for a want or lack of cause or consideration as prescribed by LSA-C.C. Arts. 1893 et seq., defendant contends that the sale is voidable and prays that it be annulled, avoided, rescinded, and set aside; and that, accordingly, plaintiff’s demands be rejected and plaintiff condemned to return to defendant the purchase price paid of $12,500.00, together with expenses of $27,158.82, as damages incurred in the testing and in the attempt to perfect the heaters so that they would serve the purposes intended.
The motive inducing and prompting the parties to enter into the contract with which this action is concerned was that the heater would serve the purpose, as already noted, of protecting fruit, vegetables, and other produce from damage occasioned by freezes and cold. Such was the intent of both parties. Both parties envisioned, in their agreement, a heater that would function properly and render satisfactory service. The parties obviously hoped that their contractual relationship would inure to the interest and advantage of both. In these respects they were in error. The venture was a complete failure, not from any act or omission of either party but because the heater as designed and as described in a patent pending, and despite their early belief and high hopes in its workability, would not function or render the services intended. The consent of the parties to the contract was based upon error of fact, without a belief in the reality of which the parties would never have entered into the agreement. Consent to the contract was, therefore, induced by and predicated upon error.
Appropriate to the situation here are the pronouncements in LSA-C.C. Art. 1819, the language of which reads:
“Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communi *76 cated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
“Error;
“Fraud;
“Violence;
“Threats.” (Emphasis supplied.)
As pointed out in Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635, 639 (1942):
“Consent in law is more than a mere formal act of the mind. Legal consent is an act unclouded by error or mistake. Consent is vitiated by error. Consent produced by error of fact is not legal consent.”
However, it is recognized that it is not every error which will invalidate a contract. To afford ample protection to both seller and buyer, the rule is amplified and explained in LSA-C.C. Art. 1823. There it is said:
“Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.”
Thus, immaterial errors are eliminated. Importance is placed on the essential aspects of a transaction. Thus, says LSA-C.C. Art. 1825:
“The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.” (Emphasis supplied.)
Thus, this article defines “principal cause” as “motive,” which, as it states, means “that consideration without which the contract would not have been made.”
LSA-C.C. Art. 1826 provides that:
“No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.”
Unquestionably, the motive or purpose of defendant in entering into the contract was to manufacture and sell the heater in large quantities to fruit growers in need of an effective heater that would burn and furnish protection over long periods of time. Plaintiff understood this motive and promoted the heater as capable of furnishing such protection. A heater that could not so perform and furnish such protection was not the product that defendant intended to purchase nor that which plaintiff intended to sell. Had defendant known that the heater would not so perform and furnish the contemplated protection, defendant obviously would not have signed the contract. This constitutes error that vitiates the will and consent of the parties and renders the contract voidable. See Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954), and the authorities therein cited and quoted.
In addition to redhibition and error of fact through which contracts may be avoided, failure of cause likewise supplies a basis to avoid a contract. It is provided that “An obligation without a cause, or with a false or unlawful cause, can have no effect.” LSA-C.C. Art. 1893. By way of definition, LSA-C.C. Art. 1896 explains:
“By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.”
*77 There is a close relationship between the concept of failure of cause and the warranty expressed in the codal provisions relative to redhibition. Through the implied warranty under LSA-C.C. Art. 2520 and the express warranty provided in LSA-C.C. Art. 2529, the law requires that the seller fulfill the cause of the buyer’s obligation by delivering a useful thing which the buyer supposed he was buying. For instance, see a comment in 23 Tul.L.Rev. 83, 88 to the effect that:
“The breach of the warranty is the same in principle and result as the failure of the cause of the buyer’s obligation. Thus, where an engine was warranted to run the buyer’s mill and the engine did not generate sufficient power, it was held that under Article 1893 the obligation was without a cause and could have no effect. [Brown-Roberts Hardware & Supply Co. v. Mounger, 5 La.App. 479 (1927).] The court could have based its opinion upon Article 2529 because the declared quality which was the ‘principal motive for making the purchase’ did not exist.’’ (Emphasis supplied.)
The rule that an obligation without a cause or with a false or unlawful cause can have no effect has been consistently followed in Louisiana. For instance, we had occasion to state in Webster Tractor & Implement Company v. Roseberry, 98 So.2d 676, 677 (La.App., 2d Cir. 1957):
“It is elementary that an obligation without a cause or with a false or unlawful cause can have no effect and that such obligation must be supported by consideration, without which there is no valid obligation or contract.”
Moreover, LSA-C.C. Art. 2529 provides:
“A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.”
As was observed in Kardis v. Barrere, 17 La.App. 433, 136 So. 135 (Orl.1931—cert. denied), where there was involved an innocent misrepresentation or a breach of an express promise and warranty and not a “vice or defect” in the thing sold, as described in LSA-C.C. Art. 2525, although Art. 2520 seems to be restricted, the right of redhibition or rescission is, however, extended by Art. 2529 to all cases where there is a breach of an express warranty, even where the misrepresentation is made in good faith. It was stated in the cited case:
“It is clear that under this article quoted above [LSA-C.C. Art. 2529] a redhibition is allowed where there has been an innocent misrepresentation as to the quality or character of the thing, even though there is not ‘vice or defect’ within the meaning and intent of article 2520. In our opinion, article 2529 clearly extends the class and character of cases in which redhibition or rescission is permitted, * * 136 So. 138-139. (Emphasis supplied.)
Thus, it was held that redhibition is authorized under LSA-C.C. Art. 2529, provided that a declaration made in good faith by the seller that the thing sold had some “quality” which it is found not to have, if this quality was the principal motive for making the purchase, even though there is not a “vice or defect” within Art. 2520, for Art. 2529 extends the class and character of cases in which redhibition or rescission is permitted.
That the contract, sought to be enforced by plaintiff and to be rescinded by defendant, conveyed the right to manufacture, distribute, and sell a heater of a described design to perform particular services, rather than the heater itself, is immaterial and of no importance, because, as heretofore noted, the primary and principal motive or cause prompting the parties to enter into the contract was the production of a heater that woidd render the services and fulfill the purposes intended by both parties.
*78 The record does not support the position of the majority opinion to the effect that, by entering into the contract, the parties merely took a chance on the proper functioning of the heater and, thus, that the defendant “gambled and lost.” That the parties were serious and in earnest is evidenced by the fact of the cash payment of the purchase price of $12,500.00 and by the enormous amount expended, primarily by defendant, in an unsuccessful attempt to perfect the heater so that it would operate properly and render the services for which it was intended.
It would be illogical and not in accord with reality to hold that by the contract defendant acquired what it bargained for, that is, the mere right to manufacture and sell an article irrespective of a mutual error as to the principal cause or motive inducing the parties to enter into the contract. In this regard it appears appropriate to point out that while a patent may give a patentee the title to an intangible, incorporeal, right in the nature of a privilege or franchise to manufacture, distribute, and sell a described article (69 C.J.S. Patents § 6, pp. 175-176), and although such right may be transferred and assigned without reference to any implied warranty or validity, yet the assignee may refuse to pay the purchase price where there is a total failure of consideration flowing from the assignor, and where the patented device is inoperative, useless, and wholly worthless. 69 C.J.S. Patents § 238, p. 757.
As to the above-stated rule, this observation has been made:
“Since a patent cannot properly issue unless the invention is of some utility, the view is generally taken that in the sale of patent rights there is either an implied warranty that the patent is not wholly worthless as an invention, or the same result is reached by holding that if the patent is worthless there is a total failure of consideration, entitling the .buyer to defend an action for the price or recover the same if paid.” (Emphasis supplied.)
40 Am.Jur., “Patents,” Sec. 133, p. 622.
Generally, the principal cause in contracts of this nature is not simply the purchase of property; it is the purchase of property that could be used for the purchaser’s purposes. In C. H. Boehmer Sales Agency v. Russo, 99 So.2d 475 (La.App., Orl.1958), it was held that the prospective purchasers were entitled to the return of the consideration paid for an option to purchase, on the theory that they labored under an error of fact concerning the principal cause for taking the option, where the property could not be used for the purpose intended by them. Of similar holdings are the decisions in these cases:
Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954);
Calhoun v. Teal, 106 La. 47, 30 So. 288 (1901);
National Company v. Krider, 150 So.2d 592 (La.App., 4th Cir. 1963);
Gibert v. Cook, 144 So.2d 683 (La.App., 4th Cir. 1962).
Thus, it is not correct that defendant merely acquired the “rights” to manufacture, distribute, and sell the article in view of the fact that such “rights” were worthless for defendant’s purposes, as understood by and well known to plaintiff.
Finally, in my opinion, it can only be correctly concluded, from the established facts of this case, viewed in the light of the aforesaid principles of law, that the sales agreement between plaintiff and defendant is voidable, and, at the instance of the defendant, should be avoided, rescinded, and set aside, not only for error vitiating the consent of the parties and for its failure with respect to motive or cause but for redhibitory vices and defects in the heater, which formed the principal motive for the sale.
Plaintiff nevertheless contends that a rescission, or an avoidance, of the contract of sale, cannot be decreed because defendant neither alleged, nor made, a tender of *79 the stock of parts and dies included in the sale. Our search of the record fails, however, to disclose that such an issue was presented by plaintiff’s answer to defendant’s reconventional demands or by other pleadings. It was early observed in Woodward-Wight & Co. v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719, 724 (1909), after the court found a plea of prescription untenable:
“Nor do we find the plaintiff more fortunate in urging (in this court, for the first time, as we understand it) the objection that defendant has made no tenders of the skidders [the property which was the object of an alleged sale]. The objection should have been specially pleaded. Wood v. Nicholls, 33 La.Ann. 744; Ware v. Berlin, 43 La.Ann. 536, 9 So. 490. Moreover, by the institution and prosecution of this suit, for the balance of the price of the skidders, plaintiff, in effect, declared its intention to enforce the contract, and made it evident that a tender in avoidance of that contract would have been but a vain thing.” (Emphasis supplied.)
The court then continued to say:
“We are, however, of opinion that the machines, in the condition in which they now are, should be returned, as a condition precedent to the execution of the judgment for the repetition [return] of the amount paid on account of the price.”
It was likewise held in Mohana v. Woodall, 69 So.2d 163 (La.App., 1st Cir. 1953), that the purpose of a redhibitory action is, as a general rule, to restore the parties to their status quo. The buyer is required to return the article purchased to the vendor, who is required to return the purchase price to the vendee. But where a buyer seeks rescission on a reconventional demand to a suit by a vendor for the price of the object sold, tender by the vendee is unnecessary. See 23 Tul.L.Rev. 130, 131. Nor does the law require or contemplate the tender or return of defective objects purchased where the circumstances and condition of the objects or things do not permit such tender or return. Such an exception was involved in Brown v. Madison Paint Co., 170 So. 353 (La.App., 2d Cir. 1936), wherein plaintiff sought to recover the price paid for a barrel of liquid roofing material because the material did not fulfill the purposes for which it was bought, the court treated the action as one in the nature of a redhibitory action and affirmed a judgment in favor of the purchaser for the amount of the purchase price of the material. The impossibility of tendering or returning the material was obvious to all. No point was raised with reference thereto.
Moreover, in the instant case, the inclusion of the parts and dies in the contract was only incidental to the primary concern and intention of the parties. They were of only secondary concern or consideration. Moreover, the intent of the parties was that these movables would be used in the construction of the heaters and would thereby be consumed or worn out in the use to which it was contemplated they would be put. Rescission of a sale, so far as I have been able to determine, has never been denied on that account.
Nor is there, in my opinion, any merit in plaintiff’s plea of prescription of one year directed against defendant’s reconventional demands for a rescission of the sale, return of the purchase price, and for damages. This plea, urged under the provisions of LSA-C.C. Art. 2534, was, in my opinion, properly overruled. However, plaintiff did not appeal from the ruling nor from the judgment rendered on the merits of the cause. Nor did plaintiff, in his answer to defendant’s appeal, complain of any error with respect to the action taken overruling the plea of prescription. The plea is not properly before this court for consideration.
The record, nevertheless, discloses plaintiff was, as late as March, 1966-, engaged in an effort to remedy the defects in the heater. A rule has been developed in the jurisprudence of this State, which has *80 been generally followed, to the effect that prescription in a redhibitory action does not begin to run until the vendor ceases his efforts to remedy the defects in the thing sold. The principle is based on the premise that when a vendor attempts to remedy a defect in a thing sold after the defect has been discovered by the vendee, the vendee is not definitely put on notice that an action in redhibition will be necessary until the vendor abandons his efforts to remedy the defect. See:
Woodward-Wight & Co. v. Engel Land & Lumber Co., supra;
A. Baldwin Sales Co. v. Mitchell, 174 La. 1098, 142 So. 700, 703 (1932);
Goff v. Dewey Olivier, Inc., 137 So.2d 393 (La.App., 3d Cir. 1962-cert. denied);
Brown v. Dauzat, 157 So.2d 570, 575 (La.App., 3d Cir. 1963);
Motorola Aviation Electronics v. Louisiana Aircraft, 172 So.2d 118 (La.App., 1st Cir. 1965-cert. denied).
Under the facts of this case, the liability of plaintiff as a seller in good faith is to make restitution to defendant, likewise in good faith, of the purchase price. In this regard, LSA-C.C. Art. 2531 provides:
“The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.”
The provisions of the above-quoted codal authority limit reimbursement, where the vendor was in good faith, to expenses “occasioned by the sale” and “those incurred for the preservation of the thing” sold. No contention is made that any expenses paid were occasioned by the sale. As to the expenses purportedly incurred there is no showing that such expenses, or what amount thereof, were incurred for the preservation of the heaters.
My conclusion is that the sale involved in this litigation should be avoided and rescinded and that, accordingly, plaintiff should return to defendant the purchase price paid.