(38 South. 432.)

No. 15,491.

GEORGE v. SHREVEPORT COTTON OIL CO.*

(March 13, 1905.)

PRESCRIPTION—ACTION QUANTI MINORIS—DAMAGES—SALE—MANUFACTURED ARTICLES.

1. An action quanti minoris, which, by reason of its facts, falls under the provisions of article 2545 of the Civil Code, is governed by the special rule as to prescription which is laid down in that article.

2. While a vendee who has sold the things which he purchased has disabled himself from bringing a redhibitory action, he may still have relief in an action quanti minoris; and in such an action he can claim and recover damages from his vendor, if he knew of the vices of the things he sold, but omitted to declare them. He is, however, controlled as to such demand by the conditions, rules, and limitations of the action quanti minoris.

3. A manufacturer who disposes of the things which he has manufactured is properly and legitimately held presumptively to a knowledge of the qualities of the things he sells.

Monroe and Provosty, JJ., dissenting.

(Syllabus by the Court.)

---

*Rehearing denied April 10, 1905.

Certiorari from Court of Appeal, Parish of Caddo.

Action by A. H. George against the Shreveport Cotton Oil Company. Judgment for plaintiff was reversed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Affirmed.

Wise, Randolph & Rendall and Albert H. Leonard, for applicant. Pugh, Thigpen & Foster, for respondent.

### Statement of the Case.

NICHOLLS, J. In the application for this writ of review the petitioner alleged: That he brought his action to recover $1,- 571.69, and interest, for damages resulting from defendant's breach of contract to sell 1,000 long tons of prime cotton seed cake.

That the defendant answered by a general denial, and pleaded the prescription of 10 and 20 days, and of 1 and 2 years. That the case went to trial, and there was judgment for plaintiff for $1,167.44, and interest, and a nonsuit as to the remainder of plaintiff's demand. That an appeal was taken by the defendant to said Court of Appeal, and that plaintiff answered same, praying that the judgment of the lower court be increased to the amount sued for.

That the said Court of Appeal had recently rendered a judgment reversing the lower court, reducing its judgment to $133, and sustaining the plea of prescription of one year as to all other items of damage. That, as shown by the opinions of the district and appellate courts, they found for petitioner on the facts, and the only error complained of is error of law in the opinion of said Court of Appeal, in applying the prescription of one year in bar of the principal part of petitioner's demand. That this suit is in no sense an action for the diminution of the price on account of the deficiency in quantity and quality of the cake delivered. It is an action for damages, as if for the inexecution or nonexecution of the contract, and it is brought under the general provisions of article 1930 of the Civil Code, relating to damages for the violation and inexecution of contracts in general. The prescription pleaded applies to an action for a diminution of the price, brought under the special provisions of the Code relating to remedies of purchasers, and it is clear that it has no application here.

That if the judgment be correct in allowing him to recover for his loss of profit, which was clearly established, as found by both courts, it certainly should allow him for all shown, and not merely for the 107-ton shortage, and that, under any view of the case, the judgment should be increased to cover entire loss of profit.

Plaintiff's petition in the district court averred that during the month of November, 1899, he (then doing business for himself, and on his own account, under the name of the Southern Manufacturing Company, in said city of Meridian) purchased from said defendant oil company 1,000 long tons of prime cotton oil cake, at the rate of $18.25 per short ton, free on board cars at said defendant's mill at Bossier City, La., which said defendant agreed to deliver at said price F. O. B. cars at said place to "your petitioner" during the months of January and February, 1900.

That defendant failed and refused ·to deliver said amount to petitioner, and actually delivered only about 893 long tons, or 1,000 short tons; denying it was under any liability to deliver more, although the fulfillment of its contract was repeatedly demanded by petitioner, and defendant put in default. That said 1,000 long tons were well worth to him, over the amount he agreed to pay, to wit, $18.25 per ton, a clear profit of $1.25 per long ton, or, for the difference between the amount delivered and the amount to which he was entitled under his contract, a sum of $133 damages, which said amount is now due petitioner. That on the said cake actually

·delivered he paid for same as follows: Drafts were drawn for each shipment, attached to bill of lading, and all said drafts were paid before said cake reached its final ·destination, and before any inspection of same could be made. That he paid defendant in full for said cake so delivered at the price aforesaid of $18.25 per short ton, and that he had resold said cake so bought for export. That when the greater part of said cake was inspected at Chalmette, near New Orleans, prior to its being loaded on shipboard, it was found to be of an inferior quality, and not of the quality bargained for between petitioner .and defendant, and that the said cake, when so delivered at said defendant's mill at Bossier City, La., on board cars, was in same condition as found when inspected.

That defendant violated its contract with plaintiff in making delivery of such inferior and unsound goods, and that, as soon as he discovered the inferior and unsound quality ·of the said cake, he promptly notified said defendant, but it refused to take any action for the correction or adjustment of its violation of its said contract, and petitioner was compelled to make the best disposition of ·same possible under the circumstances, which disposition he specifically set out. In view of the premises, he prayed that said defendant company be cited; that there be judgment against defendant in the amount and interest claimed.

Defendant answered, pleading first the general issue. It then averred that it sold to plaintiff 100 to 1,500 short tons of prime cake, at the option of respondent, at $18.25 per ton, January and February delivery, and respondent, exercising its option, notified defendant that it would only deliver 1,000 short tons, which it had delivered according to said contract, and in full of same. Defendant also pleaded prescription. The district court rendered judgment in favor of the plaintiff for $135.75, with legal interest, for the further sum of $606.89, with interest, and the further sum of $267.10, with interest, and nonsuited the plaintiff as to the item of $403 claimed for additional loss on sale to Steinhart & Co. The defendant appealed to the Court of Appeal. That court annulled, avoided, and reversed the judgment appealed from, and rendered judgment in favor of the plaintiff for $133, with legal interest from the 3d of April, 1900, and rejected plaintiff's demand in all other respects. After an unsuccessful attempt to obtain a rehearing, plaintiff applied for and obtained a writ for the review of the judgment.

This case was brought up for review for the purpose of ascertaining whether the Court of Appeal correctly applied the law to the state of facts found.

The facts found were that the defendant had agreed to sell and deliver to plaintiff, at Bossier City, the locality of its mill, 1,000 long tons, or 1,120 short tons, of prime cotton oil cake; that it in fact delivered 1,000 short tons—a deficiency in quantity of 120 short tons; that, of the oil actually delivered, a very considerable part was of inferior quality, and that he suffered a loss on this score; that plaintiff had, at the time of the institution of this suit, resold all the oil cake which was delivered.

That part of the judgment which was in favor of the plaintiff for the sum of $133, with interest, as a consequence of the nondelivery of the quantity of the cake which defendant had agreed to deliver, is not before us.

The Court of Appeal, after rendering judgment in favor of the plaintiff on that branch of his demand, rejected the balance of his claim, and, in so doing, used the following language:

"It is too well settled to require any discussion here that the only remedy a purchaser has in the event of the defective quality of the thing delivered, when, as in this case, it has disposed of it, is an action for a diminution of the price, as specially provided in the Civil Code, and he cannot recover damages under the general provision of the law, as if for the inexecution of the contract. Civ. Code, arts. 2438, 2496, 2519, 2520, 2541, 2543; Wall v. Bry, 1 La. Ann. 312;

Ledoux v. Armor, 4 Rob. 381; Richardson v. Johnson, 1 La. Ann. 389; Peterson v. Burn, 3 La. Ann. 655; Fisk v. Proctor, 4 La. Ann. 562; Foster v. Baer, 7 La. Ann. 613; Fuller v. Cowell, 8 La. Ann. 136; Bonzano v. Auze, 10 La. Ann. 188. · Hence the plaintiff cannot in this case recover the damages alleged to have been suffered by him in consequence of the inferior quality of the cake delivered."

### Opinion.

.This court has several times held that a return of the thing sold is indispensable to support a redhibitory action, and that a vendee who, by selling, has disabled himself from returning the thing, cannot recover in such an action; accompanying, however, that declaration by the statement that that fact would not bar an action for a diminution of the price. While the plaintiff in this case, by reason of having disposed of the oil cake which he purchased, could no longer bring an action for the rescission or resolution of the sale, he was not cut off by that fact from bringing the action known in France as the "action estimatoire," in this state as an action "for the reduction or diminution of the price," and generally as the action "quanti minoris." Merlin's Repertoire de Jurisprudence, verbo "Redhibitoire." Article 2531 of the Civil Code declares that the seller, who knew not the vices of the things, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits which the purchaser has drawn from it be sufficient to satisfy those expenses. Article 2545 declares that the seller, who knows the vice of the thing he sells, and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages. Articles 2534, 2544, and 2554 limit the time within which a redhibitory action or one for reduction of price has to be brought to one year, at the furthest, commencing from .the date of the sale; but this limitation does not apply where the seller had knowledge of the vice, and neglected to declare it to the purchaser. In the latter case the action may· be commenced at any time, provided a year has not elapsed since the discovery of the vice. The discovery is not presumed. It must be proved by the seller.

A claim for damages may well be embodied by a plaintiff in his action for a reduction of the price. He may fail in that particular feature of his demand by reason of the special facts of the case, but the action would none the less be still an action quanti minoris, though it would be one with additional factors embraced in it, which would affect the question of prescription, and the extent of the relief which should be granted. Paraphrasing what Laurent says, speaking of an action "recursoire" (volume 24, § 303), the demand, being born of the action in warranty for the vices of the thing sold, proceeding from the same cause, and subjected for its justification to the same rules, is necessarily controlled by the same conditions in its exercise, and cannot claim a greater limit for its duration than it does.

Plaintiff's action is not a redhibitory action. It is an action quanti minoris, claiming damages under the state of facts declared upon. The briefs filed in the case indicate that the question as to whether a defendant, being in good faith, could under any circumstances be held liable for damages, and, if so, whether he could be so held under the pleadings in this case, entered as a factor in the determination by the Court of Appeal of the issues involved herein.

Laurent is of the opinion that, even where the seller is in good faith, the purchaser can claim damages from him in the particular class of cases under the circumstances to which he refers. Volume 24, § 294. A discussion of that particular question is not necessary in this case. As a seller is, beyond question, liable to the purchaser for damages, under article 2545 of the Code, in the event he knew of the vices of the thing he sells, it is pertinent to inquire in this case

whether the defendant knew of the inferior quality of the oil cake when he sold it to the defendant, and, if so, what the situation resulting from that fact is.

Defendant contends that the plaintiff does not allege his knowledge of the alleged inferior quality of the article sold. Plaintiff maintains, on the contrary, that it was not essential for him to have made use specifically of the word "knowledge"; that his pleadings disclose a state of facts which, being averred, carried with it, as a legal consequence, the presumption of knowledge. His counsel refer the court to Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86, as announcing that, when the seller is the maker or manufacturer of the thing sold, the fair presumption is that he understood the process of its manufacture, and was cognizant of the defects caused by the process, and that a manufacturer knows the raw material from which the thing is made.

On this same subject, Laurent (section 295) says:

"La raison est qu'un ouvrier se rend responsable de la bonté de ses ouvrages: son impéritie ou defaut de connaissances dans tout ce qui concerne son art est une faute qui lui est imputable, personne ne devant exercer publiquement un act s'il n'a toutes les connaissances nécessaires pour le bien exercer. Il en est de même du marchand fabricant ou non fabricant. Par la profession publique qu'il fait de son commerce, il se rend responsable de la bonté des marchandises qu'il debite. S'il est fabricant, il ne doit employer que des bons ouvriers et de bonnes matières premières. S'il n'est pas fabricant, il ne doit exposer en vente que de bonnes."

We are of the opinion that the doctrine announced in 110 U. S., 3 Sup. Ct., 28 L. Ed. (the same as that expressed by Laurent) is conservative, and that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells; and we apply that presumption to the case before us. So holding, however, does not benefit the plaintiff, in view of the fact that he permitted more

than one year to elapse after the discovery by him of the inferior quality of the things which he bought, before instituting the present action. The explanation given for adopting the short prescription fixed for this particular class of action is the necessity and propriety of determining with promptness and certainty whether the articles sold had or did not have the vices which they were charged to have had.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the Court of Appeal herein brought up for review remain undisturbed and in full force and effect.

MONROE, J., dissents.

See dissenting opinion of PROVOSTY, J., 38 South. 434.