JOSEPH V. FERGUSON

        VS

FRANK ROUSEO

No. 7681.

February 9th, 1920.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for the price of hay sold and delivered to the defendant, and a reconventional demand for injury done to animals fed upon the hay by reason of its bad quality. The bill sued on is composed of several items dating from August 21st, to November 17th, 1919, amounting in all to $680.37. The last item is for $26.06 and is the cause of this litigation.

Defendant denied that he was indebted to the plaintiff; and, assuming the character of plaintiff in reconvention, he averred: that he was engaged in the livery business and sale of horses at auction; that on October 11th, 1916 he purchased two car-loads of good quality hay from the plaintiff, one car at the price of $11.50 per ton, and the other at $12.50 per ton; that he purchased the hay for the purpose of feeding his horses; that he hauled the first load of hay from the railroad to his stable and used it; that on October 23 he hauled a part of the second car-load of hay to his stable, and, in the usual course of business, fed said hay to his horses on the evening of said day; that on the morning of October 24th, he found his animals sick and lying on the ground; that he immediately called in a veterinary surgeon who pronounced that the horses were rendered sick from having eaten that hay which contained forage poisoning; that, as a result of said poison, six horses died and fifty remained sick from October 22d, 1916 to October 30th, 1916; that the six horses had cost him $924.00; that the remaining fifty-nine horses in his stable remained sick for nine days; that it cost him $318.60 to feed those horses during those nine days; that in commissions as auctioneer and loss of profit on the sale of those horses he lost $600; and paid the veterinary surgeon $10.75; making a total loss of $1853.35 which he claims against the plaintiff.

The District Court rendered judgment in favor of plain-

215

tiff for the amount claimed by him less $26.06, the price of the hay used by defendant which had generated the forage poison, and rejected the reconventional demand.

The defendant has appealed.

The facts of the case are as follows:

The plaintiff is a wholesale dealer in hay and grain; the defendant's occupation is set forth in his answer; he has been in the business about 20 years; he had been dealing with the plaintiff for more than two years; he always bought a low quality of hay; about the middle of October the plaintiff received some hay from the Texas Pacific Railroad; it was in bales, and was unloaded from the cars and put under the railroad sheds; all hay is sold from that place; the defendant sent up to the sheds where the entire car was unloaded, and hauled to his stable the hay he had bought, being a car-load of Les-pedeza hay, at $12.50 a ton; it was a lot of ordinary cheap hay of the low grade usually bought by the defendant; such hay was then worth $17 or $18 a ton; a car-load is about six and a half tons, divided into bales of 65 or 70 pounds each; or 30 bales to the ton; the defendant hauled away about four loads or 100 bales; there was no evidence from the outside appearance of the hay, while in bales, that it was in any way damaged, and defendant did not see any:

"the first opportunity that any one could have of discovering whether the hay in the interior of the bale contains mould or not is when the bale is broken open for the purpose of being fed to the stock";

the defendant does not raise hay, nor does he bale it; he buys the hay from growers or dealers already baled; he did not know that the bales he sold to defendant were damaged; the plaintiff knows good feed when he sees it; he has been feeding horses for 20 years; on the same day on which the plaintiff hauled the hay to his stable, a stable-boy in his employ and under his instructions and in his presence, - opened up some of the bales and put the hay in the racks-; the boy died prior to the trial of the case; the next morning the plaintiff found some of the horses down and others sick, and sent for a veterinarian; he found the hay mouldy or spoiled, produced possibly by dampness; the hay had made the horses sick; the feeding of such hay to animals might bring on

216

death within two or three days; the condition of mouldy hay is apparent to the naked eye after the bale is opened, and may be detected by a person of ordinary experience and does not require an expert; that mouldy condition may happen in the best quality of hay; it may not be apparent on the outside and yet may exist in the interior of the bale; hay at $12 a ton was of the cheapest kind and should not be fed without inspection; mould in hay will produce ptomaines or forage poison or cerebro-spinal meningitis in animals, or gastro-intestinal enteritis, or an inflammation of the stomach and intestinal canal; blind staggers or stomach staggers is one and the same thing with forage poisoning; there are several forms of mould and the majority of them are harmless; mouldy hay may be fed without bad results on several occasions, and the last may cause any amount of trouble; the person feeding the mouldy hay takes the chances.

The evidence satisfies us that the bales of hay were, on the outside, as far as the eye could see, in apparent good condition, and that the mould existed in the interior of the bale, and could be detected only after the bale had been cut open and the hay shaken out. Plaintiff, therefore, can get no protection from Article C. C., 2521 (2497) which reads as follows:

"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices".

Defects which can only be discovered by opening boxes or barrels, or packages, or bags, of uncovering goods are latent. 9 La., 134; 4 R., 382; 3 A., 4, 379; 7 A., 242; 132 La., 328; or bolts of textile fabrics or cotton bales. 44 Dalloz Rep. Leg. p. 61 & 85.

Therefore these defects were sufficient to entitle the defendant to demand a rescission of the sale of the hay. But this relief he has already obtained. The plaintiff has taken back all the hay he had sold to the defendant and which was not used by him and has given him credit for it; and the judge of the District Court has rejected plaintiff's demand for the price of the hay used by the defendant, - and plaintiff has abided by that judgment.

The defendant is not entitled to recover upon his reconventional demand for two reasons. The hay he bought was of an

217

inferior quality and, according to the testimony, he took his chances in feeding it to his horses, without a previous inspection. If the damage in the hay was not apparent as long as the hay was in bales, it became apparent the moment the bales were cut open and the hay was shaken to be put into the racks. The defendant was present when the rack were filled; but if he was not, he is bound by the negligence of his stable boy. 33 A., 1368. By the exercise of reasonable care the plaintiff *or his stable boy* could have discovered that the hay was mouldy and unfit for feed.

It was negligence on the part of the defendant to have fed the damaged hay to his horses for which he alone must suffer; it would be contrary to every principle of law to hold the plaintiff responsible for the defendant's fault.

But we have seen that there was nothing in the appearance of the bales to indicate any defect in the hay, and that the plaintiff was not aware of any defect in it, and that the opportunities of the defendant to inspect the bales and the hay were the same as those of plaintiff, *and even less*. Under this state of facts the law is clearly laid down in our Code and in the decision of the Supreme Court.

C. C. 2531 (2509):

"The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits which the purchaser has drawn from it, be sufficient to satisfy those expenses". C. N., 1644, 1646.

C. C., 2545 (2523):

"The seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages". C. N., 1645.

In the following cases these articles were interpreted as meaning that the purchaser who is disappointed in the article he has bought has no other remedy than the action in redhibition or for diminution of the price; he has no action in damages against the vendor unless he charges him with knowledge, express nor implied of the vice of the thing sold. 1 A., 389; 3 A., 655; 114 La., 498; 44 Dalloz Rep. Gen. p. 77 § 151; 153, 154; 17 Baudry-Lac 373.

As early as 3 La., 331 (1832) the Supreme Court said:
"This article (2531 - 2509) would have been applicable to the present case if the purchasers had stood to each other in the simple relation of seller and purchaser, as if the appellee had been a merchant selling an imported mill. The parties would then be presumed to have had equal opportunities of viewing the thing sold and to become acquainted with its good and bad qualities, and neither of them would have been bound to be better acquainted therewith".
7 La., 261.

In 9 R., 351, the Court said:
"The good faith of the vendor may exempt him from damages, but not from the obligation to return the price".
And in 1 A., 28:
"When the seller is ignorant of the vices of the thing sold, he is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing. C.C., 2509. The costs of suit, fees of counsel, and funeral expenses, are not included among the charges to which the seller is, in such cases, subjected. It is only where he knows the vice, and omits to declare it, that he is answerable in damages. C. C. 2523. In the present instance no such previous knowledge is alleged in the pleadings, and we think none was proved on the trial". Affirmed in 2 A., 748; 7 A., 243.

In 7 La., 261, the Court said: A merchant who sells a sugar mill is not responsible for defects in it, unless he knew of their existence. 19 A., 421.

In 33 A., 1368 the Court said:
"A careful analysis of the testimony abundantly proves that defendants, who were not the manufacturers of the goods thus sold by them, were perfectly and honestly ignorant of the defects of such goods, of which they had no more occasion, or better means of judging than plaintiff or his broker; &c ".

219

In the case of Doyle vs. Fuerst & Kraemer, 8 Ct. App., 408; 129 La., 383 - quoted by defendant, the defendants were the manufacturers of the poisoned cakes which had made the plaintiff sick. In such cases the manufacturers are charged with implied knowledge of the vices of the things manufactured and sold by them. 114 La., 498; 44 Dalloz Rep. Gen. 79 § 160; 2 Benjamin Sales, p. 650 §872 A ; 24 Laurent§ 295.

See also 2 Benjamin on Sales p. 653 §877, 883; Story on Sales § 366; 35 Cyc., 406.

It is therefore ordered that the judgment herein be affirmed.