**JOHNESS v. JAHNCKE, INC.**

---

(May 24, 1926, Opinion and Decree)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Sales—Par. 216, 218, 226.**

The vendor, in good faith, of defective merchandise, is only liable for the return of the price and the expenses of sale.

2. **Louisiana Digest—Sales—Par. 237, 240, 241.**

One who has sold the thing can not maintain the redhibitory action.

Appeal from the Civil District Court Division "D", Hon. Porter Parker, Judge.

Action by Allen Johness against Fritz Jahncke, Inc. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Raymond Gauche, of New Orleans, attorney for plaintiff, appellant.

Martin G. Manion, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. Plaintiff entered into two written contracts with the defendant, both dated September 18, 1917, each of which contracts covered the purchase of and installation of a quantity of

Reynolds Asphalt Shingles upon a house owned by plaintiff situated in what is known as "Orleans Parkway" in Jefferson Parish. One house was occupied by plaintiff, and the other by plaintiff's father, as a residence.

It was stipulated in the contracts "these shingles are fully guaranteed by the manufacturer for a period of ten years and bear the label of approval of the underwriters' laboratories, and the application is guaranteed by ourselves (defendant) for a period of one year".

The first house to be roofed under this arrangement was that occupied by plaintiff himself and the price mentioned in that contract, $220.00 was paid to defendant by plaintiff. Upon completion of the second contract and within a year from the date of the contract plaintiff complained that the roofs of both houses leaked and declined to make further payment. After several ineffectual efforts to adjust the matter plaintiff filed this suit in which he claims the sum of $220.00 as damages to walls and ceilings of the two houses alleged to be due to the defective roof and also the return of the $220.00 paid on the first contract. Defendant reconvened and prayed for $260.09 the price of the shingles as installed on the second house with recognition of a lien and privilege on the property.

There was judgment against plaintiff on the original demand and in favor of defendant on the reconventional demand as prayed for. Plaintiff has appealed.

We are convinced that the shingles were not as warranted. There is abundant evidence to that effect in the record. In fact, defendant itself, recognized the defective character of the roofs, expressly by letters in record, and, impliedly by several unsuccessful efforts to repair them. The shingles, it seems, were flexible, and when the wind blew, would bend upward "like the feathers on a chicken" as one witness described it. If it happened to be raining and blowing at the same time the rain would enter the roof left unprotected by the bent shingles. Defendant admitted the tendency of the shingles to bend, in a windstorm, but denied that that characteristic affected the roof, claiming they did not bend enough for that purpose and moreover that when the sun came out it would soften the shingles causing them to relax and resume their accustomed place.

Mr. Ried, under whose supervision the roof was installed for the defendant, testifying in defendant's behalf said:

"Q. How about the bottom of the shingle? What is to stop it from flapping?

"A. The asphalt is made properly flexible, so that when the wind gets under the shingle, unlike a slate or wooden shingle, it only bends.

"Q. When it bends what is to prevent the water from coming through?

"A. The shingle above comes over sufficiently to stop that.

"Q. Do these shingles lose their flexibility some time so as not to come back?

"A. I have seen that type of shingle when fifteen years old, and my knowledge has been that when they do bend back, the sun sufficiently melts the asphalt so as to bring it back if it should be rigid in an upright position."

It thus appears that these shingles display great accommodation to circumstances, but we trust we do the manufacturer no injustice, and ourselves no injury, when we observe that adaptability in a shingle is much less admirable than in a human and that our conception of good shingles and good roofs is inconsistent with flexibility and comports more closely with the idea of rigidity. Besides, any commodity, which depends upon such close co-operation with natural and elemental forces for

proper functioning is too uncertain for such an important office as the shelter of mankind.

Plaintiff has sustained the burden of proof of the defective character of the roofing and its unfitness for the purpose of which it was intended. It follows from what has been said that there can be no recovery upon defendant's reconventional demand for a vendor warrants the fitness of the thing sold without any special warranty as there was in this case. Fee vs. Sentell, 52 La. Ann. 1957, 28 South. 279; No. 7420 Orl. App.

Plaintiff's demand is two-fold.

First: The recovery of the price ($220.00) paid for the first roof. Second: Damages to his property ($220.00) caused by the defective roof.

Taking up the second proposition first as it is more easily disposed of, we conclude that there can be no recovery on this account because, a vendor, in good faith, is only bound to return the price and the expenses of sale. R. C. C., 2531; George vs. Shreveport Cotton Mill Oil Co., 114 La. 498, 38 South. 432; 12 Orl. App.; Iberia Cypress Co. vs. Von Schoeler, 121 La. 72, 6 South. 105. There is no suggestion of bad faith here.

As to the claim for the return of the price paid for the first roof, this demand is in the nature of a redhibitory action and in this connection we find that this house, the roof of which was paid for, was sold by plaintiff after this suit was filed and before the trial in the district court. It is true that plaintiff says, and it is not contradicted, that he guaranteed his vendee that he would "make the roof good". Nevertheless the roofing is no longer in his possession and the redhibitory action will not lie. The remedy in such case is the action quanti minoris.

"This court has several times held that a return of the thing sold is indispensable to support a redhibitory action, and that a vendee who, by selling, has disabled himself from returning the thing, cannot recover in such an action; accompanying, however, that declaration by the statement that that fact would not bar an action for a diminution of the price. While the plaintiff in this case, by reason of having disposed of the oil cake which he purchased, could no longer bring an action for the rescission or resolution of the sale, he was not cut off by that fact from bringing the action known in France as the 'action estimatoire', in this state as an action 'for the reduction or diminution of the price', and generally as the action 'quanti minoris'. Article 2531 of the Civil Code declares that the seller, who knows not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits which the purchaser has drawn from it be sufficient to satisfy those expenses. Article 2545 declares that the seller, who knows the vice of the thing he sells, and omits to declare it, besides the restitution of the price and repayment of the expense, is answerable to the buyer in damages."

But there is no evidence upon which to predicate a judgment quanti minoris. We can not guess at a proper allowance. The roof is still in use, however defective, the house has been sold and no loss experienced, so far as the record discloses, by plaintiff.

The judgment appealed from is reversed and it is now ordered that plaintiff's demand to the extent of $220.00 be rejected and as to the balance thereof that there be judgment of non-suit.

It is further ordered that defendant's reconventional demand be dismissed. The cost of the district court to be paid by plaintiff and of this appeal by defendant.