157 So.2d 570 (1963)
Hugo M. BROWN, Plaintiff-Appellee,
v.
Wilfred J. DAUZAT, Defendant-Appellant.
No. 943.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
Rehearing Denied December 3, 1963.
*572 Gravel, Sheffield & Fuhrer, by David A. Sheffield, Alexandria, for defendant-appellant.
J. B. Nachman, Alexandria, for plaintiff-appellee.
Before TATE, SAVOY and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Brown purchased a brick veneer home from the defendant Dauzat in 1957. In 1961 Brown brought this suit to recover for vices and defects allegedly resulting from improper and faulty construction of the building by Dauzat, the seller.
The trial court rendered judgment in favor of the plaintiff Brown for $4042.50, the estimated cost of replacing a defective foundation and repairing the damages which had resulted from it.
By his appeal, the defendant-appellant contends that the trial court erred (a) in overruling his plea of prescription and (b) in finding, on the merits, that the defendant had improperly constructed a faulty foundation.
The evidence shows that the defendant Dauzat was a building contractor who had constructed the residence and had then sold it to the plaintiff Brown. Commencing shortly after the sale in 1957, and continuing thereafter, various serious defects began to appear in the building: over the years, the brick walls began to crack (and were in fact partly replaced by the contractor in 1959), the doors could not fasten or fit into the door frames, the floors sloped and became loose, the roof began to sag, etc.
There is substantially little dispute in the evidence that the primary cause of many of these defects was that the foundation of the brick veneer home continued to settle or sink. The defendant Dauzat denies that any construction defects on his part as builder was the cause of this faulty foundation condition.

1. Legal Principles Applicable.
In such situations, the recovery by the purchaser for building defects is governed by LSA-Civil Code Articles 2520 and following, providing for the buyer's remedies in the event of hidden defect in the thing sold of such a nature that the buyer would not have purchased had he known of it. Wilfamco, Inc. v. Interstate Electric Co., 221 La. 142, 58 So.2d 832; McEachern v. Plauche Lumber & Construction Co., 220 La. 696, 57 So.2d 405; Johnson v. Hunter, La.App. 2 Cir., 88 So.2d 467 (excellent summary of applicable law).
In the case of a defectively constructed building, the measure of recovery is usually the cost of repairs necessary to convert the unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436. In addition, damages may be recovered if the seller actually knew or is presumed to have known of the defect at the time of the sale. LSA-C.C. Art. 2545; Johnson v. Hunter, cited above; see 17 La.L.Rev. 325 (1957). The artisan, craftsman, builder, *573 or manufacturer is always presumed to know of the vice or defect in the article he constructs, manufactures or builds. Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (extensive discussion of French and Louisiana authorities).
The buyer may not, however, recover for defects discoverable by simple inspection at the time of the sale by a reasonably prudent buyer acting under similar circumstances. LSA-C.C. Art. 2521; Pursell v. Kelly, 244 La. 323, 152 So.2d 36. Nevertheless, an improperly constructed foundation, which settles and causes various vices or structural defects subsequent to the sale, is not regarded as an apparent defect which might reasonably have been discovered by simple inspection; therefore, recovery for the cost of repairs thereby necessitated is allowable in a redhibitory action. Lemonier v. Coco, 237 La. 760, 112 So.2d 436; Bayou Rapides Lumber Co. v. Davies, 221 La. 1099, 61 So.2d 885.

2. The Defendant's Plea of Prescription.
The most serious issue presented by this appeal is raised by the defendant's plea of prescription. This is based on the contention that the plaintiff's suit was not brought until more than one year following (a) the sale, (b) the plaintiff's discovery of the faulty foundation, or (c) the last remedial repair attempt by the defendant-seller whichever is regarded as the date on which prescription commenced.
The legal principles applicable to decision of the defendant's plea of prescription are as follows:
Actions such as the present to recover for redhibitory defects must be instituted within a year from the date of the sale, unless the seller knew or is presumed to have known of the vice and neglected to declare it to the purchaser; if the seller had actual or presumed knowledge of the defect, the redhibitory action may be commenced at any time within a year following discovery of the vice by the buyer. LSA-C.C. Arts. 2534, 2545, 2546. The burden of proving the buyer's discovery of the vice is upon the seller. LSA-Civil Code Art. 2546.
Thus, prescription does not commence to run in favor of the owner-contractor who sells a building he himself has constructed, and who thus is presumed to have knowledge of latent defects, until the purchaser discovers these defects; and the burden is upon the vendor to prove when the buyer discovered the redhibitory vice. Tuminello v. Mawby, 220 La. 733, 57 So.2d 666; Hermeling v. Whitmore, La.App. 1 Cir., 140 So.2d 257, certiorari denied. As we shall shortly see, even after the buyer discovers the defect, however, prescription does not begin to run until the seller abandons any attempts to remedy the redhibitory defectand the primary question before us concerns this principle.
In the instant case, the sale took place in July, 1957. The buyer suspected that the cause of his continued troubles with the walls and flooring was due to some fault in the foundation as early as May, 1960. Exhibit P-9, Tr. 40. The plaintiff buyer's suit herein was not filed until October, 1961.
The plaintiff contends, however, that the serious nature of the faulty foundation was not really discovered by him until July of 1961, just prior to suit, when he finally had another contractor examine the premises. Although cracks in the walls and other defects had appeared within a few months of the sale, and although other and continuously more serious defects in the walls, floor, and roof eventually appeared as the foundation settled, the defendant-seller did attempt to remedy these defects whenever the plaintiff-buyer complained to him of them.
The essential prescriptive issue arises from these continued repairs by the builder. For, even after the buyer's discovery of the redhibitory defect, if the seller attempts to remedy it, the prescription does not begin to run until the seller abandons his attempts. Baldwin Sales Co. v. Mitchell, 174 La. 1098, 142 So. 700; Woodward-Wight & Co. v. *574 Engel Land and Lbr. Co., 123 La. 1093, 49 So. 719; Hermeling v. Whitmore, La.App. 1 Cir., 140 So.2d 257, certiorari denied; Goff v. Dewey Olivier, Inc., La.App. 3 Cir., 137 So.2d 393, certiorari denied.
The cited Supreme Court decisions held that prescription does not commence when the seller attempts to remedy redhibitory defects until such seller has abandoned his efforts to do so. Based upon this, the trial court suggested that the prescription did not run herein until July of 1961, when, according to the defendant-seller's own testimony, he for the first time after attending to every previous complaint by the buyerdecided to make no further efforts to repair any defects, because the buyer had retained an attorney. Tr. 413.
We are not called upon to decide whether the abandonment can properly be held to have occurred only when the seller subjectively determined in his own mind to abandon repair efforts, rather than when the last objective repair effort was made by him, because we agree with the further conclusion of the trial court that, in any event, there was repeated interruption of prescription by continual repair efforts by the defendant between 1957 and 1961.
Certain court of appeal cases have treated each repair attempt by the seller as an interruption of prescription, so that the burden of proving such interruption is upon the plaintiff-buyer, Delahoussaye v. Domingues Chevrolet, Inc., La.App. 3 Cir., 137 So.2d 356, certiorari denied, and so that a repair attempt made more than one year following the buyer's discovery of the defect does not save the action, because prescription has already accrued, Aymond v. Gremillion Bros. Implement Co., La.App. 2 Cir., 56 So.2d 311. However, if the repair attempt is believed to have corrected the redhibitory defect, the prescription in favor of the seller does not begin to run again until the defects reappear and are discovered to be such by the buyer. Hermeling v. Whitmore, La.App. 1 Cir., 140 So.2d 257, certiorari denied.
Able counsel for the defendant-seller contends that the record shows that the last remedial repairs accomplished were late in 1959, about two years before suit, when, according to the defendant's own testimony he had torn down and replaced two of the brick walls. Tr. 445-446. Counsel thus contends that this action for redhibitory defects had prescribed when filed in 1961. Aymond v. Gremillion Bros. Implement Co., cited above.
The evidence to prove the dates of the repeated repair efforts by the present seller is somewhat vague, and perhaps understandably so, since the buyer and his wife made no effort to record their repeated complaints, each of which the defendant by his own admission attempted to attend to.
The plaintiff's wife testified that she continually complained to the defendant Dauzat of defects as they appeared from 1959 through 1961, and that each time Dauzat attempted to fix the defects and assured her that they could be remedied. Tr. 133. See also Tr. 294. According to the plaintiff and his wife, the first positive knowledge that they had that it would be necessary to replace the foundation to cure the defects, was when they finally had their home inspected by another contractor in July of 1961. Tr. 129, 276.
The defendant-seller's testimony, although vague as to dates, does indicate that some of the remedial repair work was done following the major wall repairs in late 1959. Tr. 447, 449. Perhaps more important, he concedes that each time the plaintiff's wife complained of defects, he always tried to correct them. Tr. 450.
Somewhat corroborating the plaintiff's wife testimony that these complaints continued into 1961 (i. e., within a year of the suit), is the defendant-seller's frank admission that these complaints continually reoccurred, and that each repair attempt *575 seemed to satisfy the plaintiff's wife, but nevertheless "maybe six, eight, ten months later it seemed like her house had settled again, I'd go again and do it again." Tr. 412. Further, the seller Dauzat admitted that he had remedied every previous complaint and intended to attend to her final complaint of July 1961, except that before he had gone to her house to do so she had retained an attorney. Tr. 413.
The Supreme Court decisions in Baldwin Sales Co. v. Mitchell and Woodward-Wight & Co. v. Engel Land and Lbr. Co., cited above, are the parent cases of the line of jurisprudence holding that prescription does not begin to run until the seller abandons his attempts to remedy the defects. The basic rationale of these decisions is that, when a seller attempts to remedy a defect after it is discovered by the buyer, the buyer is not definitely put on notice that a redhibitory suit will be necessary until after the seller abandons his efforts to remedy the defect. 142 So. 703; 49 So. 724.
Applying this rationale to the present circumstances, as defects continuously appeared of increasing seriousness, the plaintiffs could not know that it was necessary to bring their redhibitory action in order to avoid the accrual of prescription, because of the defendant's consistent and repeated assurances and attempts to remedy each defect as discovered.
Under all of the circumstances reflected by the record, we find no manifest error in the holding by the trial court that the testimony of the plaintiff and his wife sufficiently proved that the defendant-seller continued to attempt to repair defects as they appeared, and as the buyers complained to him of them, so that prescription did not commence to run until within a year of the suit. Thus, the present suit was timely filed in October of 1961.

3. The Merits.
The trial court awarded $4042.50 to the plaintiff, being principally the cost of replacing a grossly insufficient foundation and making the repairs necessitated because of the settling of the house, the sagging of the roof, the cracking of the walls, etc., caused by this faulty foundation.
The testimony of the two expert construction witnesses testifying for the plaintiff was that (a) the concrete foundation (also called the "footing" or the "chain wall") was grossly insufficient to support the brick veneer wall constructed upon it, and that (b) the floor joists and floor sills were spaced far too wide apart to furnish adequate support for the flooring.
The defendant's principal defense is that the settling of the foundation was caused by water collecting under the house. It is urged that this was caused by the plaintiff's having placed ten to fourteen trailer loads of topsoil outside the house, allegedly causing the outside of the house to be higher than the level of the ground under the house, and thus causing the draining of water under it. The defendant also relies upon the testimony of his own witnesses to the effect that the span and spacing of the floor joists and sills was sufficient.
The testimony of the plaintiff's experts as to the insufficiency of the concrete foundation is virtually uncontradicted. The substance of their testimony is that the concrete footing was only six inches deep (Tr. 190, 242). However, this footing should instead have been eight inches thick (Tr. 221, 237, 254) in order to bear the brick wall adequately; and it should have been laid at a depth of 12 to 16 inches (Tr. 224, 254) from the surface of the ground, so as to be below the top six inches of sandy loam clay (Tr. 199) and to rest the foundation into the more solid bearing clay. (Tr. 199, 221, 252-253).
The reason that the foundation is placed deep enough to rest into the claying bearing soil is to prevent settlement. Tr. 252. If the foundation is placed so that it *576 does not rest into this solid bearing soil, as in the instant case, it will tend to settle through the softer soil down towards the harder surface. Tr. 252, 253. The water collecting under the house may have helped cause the present foundation to sink and settle; but this was because this foundation was placed in the topsoil rather than resting into the solid bearing clay below. Even if the trivial heightening of the yard surface by the topsoil brought by the plaintiff could be conceived to have added to the collection of water under the house, we think that the great preponderance of the evidence shows that this should not have caused the foundation to settle, if it had been adequately constructed so as to rest into the bearing clay.
As we apprehend the testimony, the inadequacy of this foundation was the principal cause necessitating most of the house repairs for which recovery was allowed.
We further find no error in the trial court's finding the floor joists to be inadequate, upon the basis of measurements made by the two construction experts testifying for the plaintiff.
In opposition to such testimony, the defendant had produced several carpenters and construction workers, most of whom were or had been employed by him, to testify to measurements made by them which showed the spaces between, and the spans of, the floor joists to be adequate and in accordance with accepted construction techniques.
However, one of the plaintiff's experts in particular crawled under the house (Tr. 191-192) specifically to make the measurements, and found the sills and floor joists to be of specified inadequate measurements (Tr. 170), while the other corroborated these measurements from his visual observation without actually crawling under the house. We find no manifest error in the trial court's having accepted the testimony of these witnesses for the plaintiff insofar as they were contradicted by those for the defendant.
We further find no error in the trial court's having refused the defendant's motion for a new trial. This motion was based upon the opinion of an expert which had been secured following the trial judgment, which opinion tended to corroborate the position of the defendant's witnesses that the joists and sills were adequate.
The issue of the adequacy of the joists and sills was fully explored by the witnesses of both parties at the trial. The defendant had the full opportunity to, but failed to, procure and to submit at the trial expert testimony such as that proffered by him in support of the motion for a new trial, which merely cumulates the other evidence already offered by him. We find no good reason, on the basis of the affidavit of this expert, to believe that a different result would have been reached if indeed the expert's testimony had been offered at the trial, or that an injustice will result because the trial court has accepted the contrary testimony of the plaintiff's experts actually introduced at the trial. See LSA-C.C.P. Arts. 1972, 1973.
The amount allowed by the trial court for making the necessary repairs is completely substantiated by the record. Accordingly, the judgment appealed from is affirmed, at the cost of the defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.