CHEHARDY, Judge.
Plaintiff, Lloyd D. Fortmayer, appeals a district court decision in favor of defendant, Donald Schulingkamp, maintaining the defendant’s exception of prescription and dismissing the plaintiff’s suit at his costs. In his judgment on this action for reduction in purchase price of a residence, the trial court judge noted that the exception of prescription was well-founded inasmuch as the house was purchased on June 14, 1976 and this petition was not filed until July 28, 1977.
Although the exception of prescription was timely filed by the defendant, the district court referred it to the merits of the case. At a trial on the merits the plaintiff testified that he purchased the residence which is the subject of this case from the defendant on June 14, 1976 for the sum of approximately $44,500 and that he had inspected the residence prior to the sale. He said that at that time he did not notice any cracks around the windows, doors or in the brick walls surrounding the house. He testified further that on the night of September 1, 1976, while he was in bed in the master bedroom of the house, he heard a loud noise like an explosion, crash or thunder. He stated upon inspection the next morning he found cracks by the window on the north side and also some on the left side of the house. Photographs of these cracks are part of the record before this court.
The defendant testified he acquired the property in question sometime during the 1950s and that in 1970 he added on “the back, the den and that little bedroom back there.” He also stated that when the property was sold to the plaintiff in 1976 its condition was good and there were no cracks or other settlement of the property. He stated the slab of the addition was laid approximately an inch or an inch and a half lower than the rest of the house to allow room for shag carpeting; but he said the floor was level although there were no pilings under the addition. The defendant also said he had obtained a building permit from the City of Gretna at the time he constructed the addition.
Walter Bonie, accepted by the court as an expert in the field of architecture and engineering, testified he examined the house and structure in question and took differential levels which were introduced as part of an exhibit in the case. His finding was that there was approximately a one- and one-half-inch differential in elevation from the rear of the addition to the portion of the addition which is attached to the home. He also concluded this differential was not intentional but the result of the foundation settling after construction was completed. He added that proper installation of pilings, a proper slab and proper gradings would have prevented the droppage. He said he had also examined the grade beam beneath the foundation of the addition and found the depth of the grade beam on the original building to be 20 inches, whereas the depth of the grade beam on the addition was only 10 inches. He said in his opinion the depths of the two grade beams should have been the same.
*673 Eld Wetzel, accepted as an expert in the field of general construction and contracting, said the Veterans Administration requirement for residential construction of a brick veneer type, where piling is not required, is that the grade beam should be 24 inches deep, 16 inches wide, with steel rods reinforcing. He also said the damage done to the structure could not be repaired but he would have to replace the whole structure at an estimated cost of $21,600 plus a 15-percent increase from the date of the estimate to the trial date.
Berkley Traughber, accepted by the court as an expert in structural, geotechnical and civil engineering, stated that, upon inspection of the structure, he found a difference in settlement of one and one-half inches between the northeast and northwest corners. He also said he found two Vs-inch crack openings in the masonry where the mortar joints were separated.
Traughber said he did not consider his finding to be major damage and he would only repair by insertion of mortar to the joints. He stated he believed the settlement was at a standstill, but admitted he would not advise construction of an addition on a house using only a 10-inch grade beam when there was a 20-inch grade beam under the main structure.
Plaintiff contends on appeal that the district court judge was in error in dismissing his case on the ground that it had prescribed. He argues his suit was filed within one year of the discovery of the hidden defect in the addition and, therefore, was within the limitations of LSA-C.C. art. 2534. He further argues that because the defendant owned the house at the time the addition was added and admitted he knew there were no pilings under it, he is presumed to have knowledge of any defects in the structure.
We cannot agree, and we affirm the district court decision.
LSA-C.C. art. 2534 states a redhibitory action must be instituted within a year at the farthest, commencing from the date of the sale. The article adds that this limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
LSA-C.C. art. 2541 provides that whether the defect in the thing sold be such as to render it useless or altogether unsuited to its purpose or whether the defect in the thing sold be such as to merely diminish the value, the buyer may limit his demand to a reduction of price. However, LSA-C.C. art. 2544 establishes that an action for reduction of price is subject to the same rules and the same limitations as the redhibitory action.
Apparently the district court judge determined, as does this court, that the “defect” shown by the testimony was the insufficiency of the grade beam used in the addition. All experts agreed, in fact, that a beam comparable to that used in the main structure should have been employed. From the testimony of the experts, however, we cannot conclude that the failure to employ pilings as support for the addition was necessarily a defect in the construction. It was not shown by any of the testimony, however, that the defendant was actually aware of any such defect as the difference in beam sizes under the main part of the house and the addition.
Although the plaintiff cites Aucoin v. Fontenot, 334 So.2d 773 (La.App. 3d Cir. 1976), in support of his request for reduction of price, we find this case to be distinguishable on its facts from the present one. In Aucoin, supra, the plaintiff sued for diminution after the slab piping in the building sold to him developed massive leaks to the end that all slab piping had to be abandoned. Testimony adduced at the trial on the merits indicated the defendant was aware that galvanized iron water pipes were located beneath the floor of the building and that they were not replaced when he remodeled it. The plaintiff, moreover, testified the defendant had assured him that all of the water piping was copper; the plaintiff’s statements in this regard were confirmed by his contractor, who said he had instructed the plaintiff to obtain this information from the defendant. Consequently, the district court judge rejected *674 the defendant’s claim that he was not aware of any defect in the building, and the appellate court did not hold the trial court was in manifest error in reaching its factual conclusions. In the present case, however, as noted above, it was not established the defendant actually knew the beam used under the main house differed in size from that used in construction of the addition.
Nor can this court find merit in the plaintiff’s argument the defendant in the present case must be presumed, under jurisprudence, to have known of the defect, citing the cases of Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); Brown v. Dauzat, 157 So.2d 570 (La.App. 3d Cir. 1963); and Hermeling v. Whitmore, 140 So.2d 257 (La.App. 1st Cir. 1961). In those cases the vendors of the structures were presumed to have had knowledge of the vice of the dwellings or residences sold since they were built and constructed by the defendant contractors.
In explaining the authorities employed in reaching this legal conclusion, however, the court explained in Tuminello v. Mawby, supra, at 668-669:
“Under the French law as well as under the jurisprudence of this state the artisan, craftsman, builder, or manufacturer is presumed to know of the vice or defect in the article he constructs, manufactures, or builds.
“In Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse & Co., 129 La. 983, 57 So. 309, 315, this court overruled a plea of prescription of one year under Article 2534, and in permitting plaintiff, the purchaser of an engine, to recover had this to say with reference to knowledge of the defect in the vendor: ‘The vice in the present case consisted in the inadequacy of the gas producer, and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects * * *; and the inadequacy of the gas producer must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it. * * * ’
“In the case of Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 907, 40 L.R.A.,N.S., 480, plaintiff instituted an action for damages for a vice in certain goods sold under Article 2545, and this court in discussing the knowledge of the defendant that the goods sold by it were defective said: ‘The principle which governs in this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of.’
“The court therein quoted as follows from the French commentators:
‘From Pothier, Vente, § 214:
‘ “There is a case where the vendor, although he was entirely ignorant of the vice of the thing sold, is nevertheless bound to repair the damage which this vice may have caused the vendee in his other property; it is the case where the vendor is a workman or a merchant who sells the fabrications of the art or trade of which he makes profession. Such workman or merchant is bound to repair whatever damage the buyer may have suffered from the vice of the thing sold in putting it to the use for which it was intended, even if such workman or merchant should pretend to have been ignorant of said vice.
‘ “The reason is that a workman, by reason of the profession which he makes of being skilled in his craft * * * (makes the solemn promise, or gives the solemn pledge, of his proficiency in his art). He *675 renders himself responsible towards all those who contract with him, for the things he makes being fit for the use to which they are naturally destined. His unskillfulness or lack of knowledge in all that concerns his art is a fault which is imputed to him, as no one should publicly make profession of an art if he is not possessed of all the knowledge necessary for exercising it well; * * * (incompetency is reckoned a fault). Dig.L. 132, Reg. Juris.”
‘From Dalloz, Codes Annotes, art 1645, Nos. 15, 16: '
‘ “But there is an hypothesis under which the purchaser will not be required to make this proof (the proof that the vice was apparent, or that the vendor had knowledge of it). It is where, by reason of the profession which he exercises, the vendor should have known even the hidden defects of the things he sells.
‘ “Thus, even though the vendor was ignorant of the vices of the thing sold, if by his profession he was bound to know them, he is in fault and ought to indemnify the purchaser for the damage suffered; good faith does not exclude ineom-petency’ — citing * * * Baudry-Lacantin-erie & Saignat, Vente, No. 436.
‘This last reference, loe. cit., reads as follows:
‘ “However, it is generally conceded that the vendor is presumed to know the vices of the thing sold when he is a workman or manufacturer selling the things of his own fabrication ; he ought to know their defects, and, if he makes the sale without revealing these defects to the purchaser, he ought to repair the damage which the latter may suffer therefrom; he ought to know what he sells, since it his own production, and, if he does not know it, there is on his part an incompetency which is a professional fault whereby he is rendered responsible for the damage.” ’
“In the case of George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432, 434, this court in discussing the knowledge of the vendor of the vice or defect of the thing sold stated: ‘We are of the opinion that the doctrine announced in [Kellogg Bridge Co. v. Hamilton] 110 U.S. [108], 3 S.Ct. [537], 28 L.Ed. [86] (the same as that expressed by Laurent) is conservative, and that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells; and we apply that presumption to the case before us.’ ”
It was not established by the plaintiff that the defendant in the present case acted as his own contractor in the construction of the main residence or the addition or that Schulingkamp can be considered a vendor-contractor in the sense that this term is used in the cases cited by the plaintiff. The defendant cannot, therefore, be presumed to have known of the defect existing in the addition. For these reasons, the plaintiff’s cause of action was prescribed when it was filed on July 28, 1977, more than one year subsequent to the purchase of the residence.
The district court decision is affirmed.
AFFIRMED.