571 So.2d 881 (1990)
D.C. PANAGIOTIS, et ux., Plaintiffs-Appellants,
v.
GAUTHIER-MATHERNE HOMES, LTD., et al., Defendants-Appellees.
No. 89-660.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
*882 Perret, Doise, Daigle, Longman, Russo & Zaunbrecher, Ian A. MacDonald, Lafayette, for plaintiffs-appellants.
Moss & Bradley, Steven M. Jankower, and Kenneth P. Mayers, Lafayette, for defendants-appellees.
Before DOMENGEAUX, C.J., and DOUCET and KNOLL, JJ.
KNOLL, Judge.
The crux of this appeal and the consolidated case of Smith v. Gauthier-Matherne Homes, Ltd., 571 So.2d 885 (La.App. 3rd Cir.1990), for which a separate decree is being rendered, is whether the ownerbuilder of a residential home abandoned his attempts to repair redhibitory defects sufficient to commence the running of the one year prescriptive period within which the purchasers had to file suit.
The facts of these cases are not disputed and involve the sale of residential property, houses and lots, in the Shenandoah Subdivision in Lafayette Parish. Both homes involved were built by Gauthier-Matherne Ltd. (hereafter Gauthier) on lots it owned in the subdivision; the subdivision was not developed by Gauthier. Brian K. Smith and his wife, Rhonda, purchased their home and lot on June 4, 1986, from Gauthier. D.C. Panagiotis and his wife, Jacqueline, purchased their home and lot from Gauthier on August 12, 1986.
On March 9, 1987, the Panagiotises wrote Ron Gauthier, one of the partners in Gauthier-Matherne Ltd., expressing their concern about the drainage of their property, since they had encountered standing water over one-third of their backyard. In the letter, the Panagiotises asked Gauthier to: (1) maintain the natural drainage of the Smiths' property which, at that time, was under construction; (2) regrade their property by placing additional topsoil in the right back corner of their property; and, (3) re-excavate the front drainage ditch along both properties. In the meantime, on March 17, 1987, heavy rains caused the ditches in front of the Smiths' and Panagiotises' houses to overflow. Water began flowing toward the Panagiotises' house under the garage door into the garage and their back yard filled with water. The Smiths' property was affected more adversely, with water six inches deep in their back yard. In response to their complaints, Gauthier took steps to remedy the flooding problem in late April or early May 1987 by complying with the requests made in the Panagiotises' letter of March 9, 1987. Despite Gauthier's remedial work, the flooding problem reoccurred on July 6, 1987, and February 18, 1988. The Panagiotises filed their petition in redhibition[1] against Gauthier[2] on July 5, 1988, and the Smiths filed theirs on July 6, 1988.
The trial court ruled that more than a year elapsed between the time that Gauthier abandoned attempts to address the flooding problem, and the dates on which the Panagiotises and Smiths filed their respective lawsuits.
The susceptibility of a house to flooding is a redhibitory defect. Ford v. Broussard, 248 So.2d 629 (La.App. 3rd Cir. 1971).
LSA-C.C. Art. 2534 provides the time within which an action in redhibition must be filed. It provides in pertinent part:

*883 "The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser."
LSA-C.C. Arts. 2545 and 2546 elaborate on LSA-C.C. Art. 2534 and provide that when the seller knows of the vice of the thing that he sells and omits to declare it, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice. Louisiana jurisprudence has firmly recognized that a builder or manufacturer is presumed to know of the vices or latent defects in the article he constructs, manufactures or builds. Accordingly, prescription does not commence in favor of the owner-builder who sells a building he himself has constructed until the purchaser discovers the defect. Smith v. H.J. Landreneau Bldg. Contractor, 426 So.2d 1360 (La.App. 3rd Cir.1983). Furthermore, even after the purchaser discovers a redhibitory defect, prescription does not begin to run until the seller abandons all attempts to remedy the defect. Brown v. Dauzat, 157 So.2d 570 (La.App. 3rd Cir.1963). The reason for this rule is that the purchaser will not know it is necessary to file a redhibitory action in order to avoid the accrual of prescription when the owner-builder has attempted to remedy the discovered defect. Id.
In considering the applicability of LSA-C.C. Art. 2546, the burden is on the defendant to show that the one year prescriptive period has elapsed. Smith, supra. Once it is proved that more than one year has elapsed either from the date the purchaser discovered the defect or from the date the owner-builder abandons all attempts to remedy the defect, depending on the facts presented, the burden shifts to the purchaser to show an interruption or suspension of prescription.
Initially, we note that, as applicable herein, the Brown decision addresses two legal propositions relative to the commencement of the prescriptive period in redhibitory actions. The first is the situation where the builder abandons his attempts to repair; in such a case, the one year prescriptive period commences with the abandonment. The other situation is where the builder makes repairs and there is a belief that the repair attempt corrected the redhibitory defect; in this instance, the prescriptive period does not begin to run again until the defects reappear and are discovered.
In the present case, the trial court had to determine whether Gauthier abandoned remediation of the flooding problem in the spring of 1987 or after its visit to the properties on the evening of July 6, 1987, or whether there was a belief that Gauthier's corrective action in the spring corrected the drainage problem. For reasons which follow, we find that the jurisprudence relative to the builder's abandonment of repair is determinative of the prescription issue presented.
In the case sub judice, Ron Gauthier testified that at the time he undertook the corrective actions requested in the spring of 1987, he told the Smiths and Panagiotises that he felt that the problem was far beyond his scope. He thought that the drainage problem was caused by the inability of the subdivision to drain into the Lafayette Parish ditches. He also testified:
"The corrective measures that were taken were on the physical lots of course that their houses were on; but it was apparent that the problem was not there. The problem was where the subdivision drained into or onto the Parish road drainage system. It would back up from that point into the subdivision. The fact that their lots were in that physical location meant that the water got up that far. But there was only so much that we could do to the physical lots themselves, and that work we did do after they requested it on March 9th...."
Ron Gauthier further testified that he did not recall speaking with the Smiths and Panagiotises again until he was asked by them to come to their homes on the evening of July 6, 1987, during a heavy rainstorm. Specifically, he stated:
"I told them during and after the time that I performed that work [in the *884 spring] that I was going to make the corrective actions on the lot that they requested but that really the problem was far beyond my scope, that I felt in fact that it was a drainage problem of the subdivision draining into the Parish drainage system. And that I felt that they should contact the Parish and get with them on that because the Parish had accepted the subdivision and therefore were supposed to maintain the ditches as well as the overall drainage system.
* * * * * *
When I went out there [to the subdivision] on July 6th, I went out at their request, ... and ... I reiterated I probably reiterated at that time that what I told them before, you know, as you can see, the water is backing up from where the subdivision drains into the Parish road system, and the Parish who had done a lot of work even before then on it would have to, you know, address it again, that it was outside my particular scope."
Mrs. Panagiotis testified as follows:
"He [Ron Gauthier] stated [in the spring of 1987] that he couldHis responsibility was for the drainage between the lots, and that he could reinstate is the word that comes to mind, the drainage along the back of the lots once the Parish had cleaned out the drainage ditches on Burlington,... the drainage in the back of the house has never been redone. But that's what he said he could do.[3] He said he could dig our ditches in the front deeper, and he assured us that the house that he put on the right side of us he would grade the lot so that we wouldn't receive additional run-off from ... [the Smiths'] home...." (Footnote added.)
In resolving this issue of prescription, we find that the trial court was presented with undisputed evidence that Gauthier performed no repair work after the spring. It is likewise clear that Gauthier's characterization of the problem as one which primarily involved the parish government is borne out by the fact that the parish performed drainage work in the affected area at the parties' request both after Gauthier finished the work in the spring and again after the July 6th flooding. In the spring, Mrs. Panagiotis testified that the parish workers dug out the ditch along Burlington Street, and that the only work done after the summer rain was done by the parish when it surveyed for elevations, cleared out ditches, and dug them deeper. Mrs. Panagiotis further testified that after the parish did this work, she wrote Ron Gauthier a letter in the fall asking him to let her know what he knew of the parish's intentions; in response, Gauthier advised her that he had no knowledge of what, if anything further, the parish intended to do.
Mr. Smith concurred with Mrs. Panagiotis' testimony and further stated that Gauthier did not assure him that there would be no more flooding after the work in spring. On the other hand, Smith's only statement contrary to Ron Gauthier's testimony was that Gauthier did not tell him that there was nothing more he could do until after the July 6th flooding.
After carefully reviewing the record, we find that there was circumstantial evidence to support Gauthier's contention that it abandoned remedial work on the property during the spring of 1987. Mrs. Panagiotis' contrary assertion is belied by her actions. In her conversation during the spring with Ron Gauthier, she agreed that it was necessary to involve the Parish of Lafayette in the correction of the drainage problem which affected the subdivision. Moreover, Mrs. Panagiotis testified that it was after the parish work crews addressed the problem in the spring and the fall that she thought that the drainage problem was solved; certainly, these repeated actions do not support her contention that Gauthier's work in the spring was intended to correct the drainage problem. On the contrary, *885 Gauthier's limited involvement after it fulfilled the three specific requests made in March, affirms that its measures in the spring were not undertaken with the belief that the drainage problem would be corrected. Furthermore, it was clearly within the province of the trial court to assess the testimonies of the witnesses, and to resolve any conflicts in light of the totality of the evidence adduced. Therefore, based on the record before us, we cannot say that the trial court was manifestly wrong in dismissing the redhibitory actions on peremptory exceptions of prescription.
For the foregoing reasons, the judgment of the trial court is affirmed. Cost of appeal is assessed to the Panagiotises and Smiths.
AFFIRMED.
NOTES
[1] Combined with the petitions in redhibition are other causes of action separate and apart from this redhibitory action which do not concern this appeal.
[2] Other persons and corporations were named as defendants, but their inclusion for this appeal is not required for the resolution of the limited issue presented.
[3] From the colloquy between the trial court and Mrs. Panagiotis it is clear that the parish government cleaned out the ditches along Burlington during May. It is also clear that Gauthier never restored the drainage along the back of the property. Nevertheless, it is obvious that any action which the parties may have against Gauthier for this particular inaction is likewise prescribed, since more than a year elapsed between the time of its assertion and the filing of suit.